The STATE of Ohio, Appellee,

v.

STEWART, Appellant.

[Cite as *State v. Stewart* (1996), 111 Ohio App.3d 525.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2491–M.

Decided June 5, 1996.

*Dean Holman,* Medina County Prosecuting Attorney, for appellee.

*Christine M. Julian,* for appellant.

DICKINSON, Judge.

Defendant Gerry Stewart has appealed from her convictions of gross sexual imposition and endangering children. She has argued that (1) the trial court incorrectly denied her motion to compel discovery of statements she made to a caseworker from the Medina County Department of Human Services ("DHS") and incorrectly permitted the state to introduce those statements into evidence, (2) the trial court incorrectly received a notebook created during the victim's therapy sessions with her psychologist as an exhibit because (a) the state did not provide it to defendant before trial, and (b) defendant did not waive the victim's physician/patient privilege, (3) the trial court incorrectly received evidence of defendant's prior bad acts, (4) the trial court incorrectly overruled defendant's motion for a mistrial, and (5) defendant's convictions of gross sexual imposition and endangering children were not supported by sufficient evidence and were against the manifest weight of the evidence.[1] This court affirms the judgment of the trial court because (1) the state was not required under Crim.R. 16(B)(1)(a)(ii) to provide defendant written summaries of oral statements she made to the DHS caseworker, (2) defendant did not establish that she was prejudiced by the admission of the victim's therapy notebook, (3) any privilege that attached to the victim's communication with her psychologist was waived pursuant to R.C. 2151.42.1(A)(3), (4) any error that arose from the trial court's improper admission

---

1. Defendant's assignments of error have been rearranged for ease of discussion.

of evidence of defendant's prior bad acts was harmless, (5) the trial court did not abuse its discretion by failing to order a mistrial, and (6) defendant's convictions of gross sexual imposition and endangering children were supported by sufficient evidence and were not against the manifest weight of the evidence.

## I

Defendant Gerry Stewart and her boyfriend, Woodrow Napier, were accused of sexually abusing defendant's seven-year-old daughter.[2] Defendant was indicted, on March 17, 1995, for rape, gross sexual imposition, and endangering children, and was tried to a jury beginning August 7, 1995. On August 14, 1995, the jury found her guilty of gross sexual imposition and endangering children, and not guilty of rape. The trial court sentenced defendant, on October 10, 1995, to three to fifteen years in prison on the child endangering count and to a definite term of two years in prison on the gross sexual imposition count. The sentences are to run concurrently. Defendant timely appealed to this court.

## II

### A

■ Defendant's first assignment of error is that the trial court incorrectly denied her motion to compel discovery of oral statements she made to a DHS caseworker and incorrectly permitted the state to introduce those statements into evidence. Defendant filed a request for discovery on May 2, 1995, for, among other things, written summaries of any oral statements she made to "a prosecuting attorney or any law enforcement officers." Pursuant to this request, she moved the trial court on August 1, 1995, to compel discovery of "any and all admissions made by [her] to the [DHS]." The trial court denied defendant's motion to compel the discovery. Patricia McDaniels, the DHS caseworker assigned to investigate the victim's allegations of sexual abuse, testified at defendant's trial. The trial court permitted McDaniels to testify, over defendant's objection, about statements defendant had made to her.

Defendant has argued on appeal that the trial court should have granted her motion to compel discovery of oral statements she made to McDaniels because Crim.R. 16 requires that the state provide discovery of all statements a defendant made to state employees. She has further argued that the trial court should not

---

2. Napier was convicted of one count of rape, three counts of attempted rape, two counts of gross sexual imposition, and one count of attempted felonious penetration. This court reversed his conviction on the rape count in *State v. Napier* (Mar. 20, 1996), Medina App. No. 2472–M, unreported, 1996 WL 122014.

have permitted the state to ask McDaniels about the statements because the state violated Crim.R. 16 by failing to comply with her discovery request.

Contrary to defendant's assertions, Crim.R. 16(B)(1)(a)(ii) does not require the state to provide a defendant discovery of all oral statements a defendant has made to state employees. Rather, it only requires the state to provide a defendant written summaries of oral statements the defendant made to a prosecuting attorney or a law enforcement officer:

"(a) * * * Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:

" * * *

"(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer[.]"

Inasmuch as the oral statements at issue in this case were not made to a prosecuting attorney or a law enforcement officer, defendant was not entitled to discovery of them. The trial court, therefore, correctly denied defendant's motion to compel discovery of the statements and correctly permitted the state to question McDaniels about them. Defendant's first assignment of error is over-ruled.

## B

█ Defendant's second assignment of error is that the trial court incorrectly received a notebook created during the victim's therapy sessions with her psychologist as an exhibit because (1) the state did not provide defendant discovery of it before trial, and (2) defendant did not waive the victim's physician/patient privilege. The victim's psychologist testified on direct examination that the victim was suffering from posttraumatic stress syndrome and had expressed "confusion and anger" over what defendant and defendant's boyfriend had done to her. She referred to a notebook that contained pictures the victim had drawn during her therapy sessions and captions in the victim's own words. At the close of the state's case, the prosecutor moved to have the notebook admitted as an exhibit. Defendant objected on the ground that she had not been provided the notebook before trial and had not waived her daughter's physician/patient privilege. The trial court overruled defendant's objections and received the notebook as State's Exhibit 5.

On May 2, 1995, defendant filed a request for discovery of any documents the state intended to use as evidence at trial. The prosecutor admittedly did not provide defendant with the psychologist's notebook, but claimed at trial that he was unaware of its existence until the psychologist brought it with her on the day she testified. Crim.R. 16(B)(1)(c) requires the state to provide a defendant documents that it intends to use as evidence at trial. Assuming that the state violated Crim.R. 16(B)(1)(c) by failing to disclose the psychologist's notebook, the trial court did not necessarily err by receiving the notebook as an exhibit. Crim.R. 16(E)(3) gives a trial court discretion to determine whether to receive evidence that the state improperly failed to disclose to the defense:

" * * * If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

Defendant failed to show that she would suffer prejudice as a result of the admission of the notebook even though she was not aware of its existence before the psychologist testified. The notebook did not contain any allegations or statements that the victim did not testify to at the trial or tell her DHS caseworker in videotaped interviews that were played for the jury. Since defendant did not demonstrate that she would be prejudiced by the notebook's admission, the trial court did not abuse its discretion by receiving it as an exhibit. See *State v. Parson* (1983), 6 Ohio St.3d 442, 445, 6 OBR 485, 487–488, 453 N.E.2d 689, 691–692.

■ Defendant has further argued that the trial court incorrectly received the notebook as an exhibit because defendant did not waive the physician/patient privilege that attached to her daughter's communication with the psychologist. R.C. 4732.19 provides that communications between a psychologist and a patient are privileged in the same manner as communications between a physician and a patient. See *Colling v. Franklin Cty. Children Serv.* (1991), 76 Ohio App.3d 736, 739, 603 N.E.2d 338, 340–341. The physician/patient privilege is codified in R.C. 2317.02(B). That statute provides that a physician may be compelled to testify about a privileged communication if the patient is deemed by R.C. 2151.421 to have waived any privilege that applies to it. See R.C. 2317.02(B)(1). R.C. 2151.421(A)(3) creates an automatic waiver of privilege when all of the following apply:

"(a) The patient, at the time of the communication, is either a child under eighteen years of age or a physically or mentally handicapped child under twenty-one years of age.

"(b) The physician knows or suspects, as a result of the communication or any observations made during the communication, that the patient has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the patient.

"(c) The physician-patient relationship does not arise out of the patient's attempt to have an abortion without the notification of her parents, guardian, or custodian in accordance with section 2151.85 of the Revised Code."

In this case, all the factors required for an automatic waiver of the privilege were present: the victim was under eighteen years of age, the psychologist had reason to believe that the victim had been sexually abused, and the privileged communication did not arise from the victim's attempt to get an abortion. Accordingly, the admissibility of the therapy notebook was not affected by the fact that defendant did not waive her daughter's physician/patient privilege. Defendant's second assignment of error is overruled.

## C

Defendant's third assignment of error is that the trial court incorrectly received evidence of defendant's prior bad acts. A witness for the state testified that, before defendant had become involved with Woodrow Napier (the boyfriend who was convicted of molesting defendant's daughter), she had another boyfriend who occasionally spent the night at defendant's apartment. According to the witness, on one of the occasions that defendant's former boyfriend was sleeping at her apartment, defendant removed a sheet that was covering his naked body and asked the witness and the victim whether they had ever seen a penis that was so large. The witness testified that defendant asked the victim to get a ruler and laughed when the victim complied with her request. Defendant objected to this testimony. The trial court overruled the objection on the grounds that the testimony was relevant to show defendant's "sexual predilections" and to rebut defendant's argument that defendant's mother had planted the idea in the victim's head that defendant and Napier sexually abused her.

The state may not introduce evidence that the accused has committed other crimes or acts independent of the crime for which he is on trial for the purpose of establishing that the defendant acted in conformity with his bad character. *State v. Elliott* (1993), 91 Ohio App.3d 763, 770, 633 N.E.2d 1144, 1148; Evid.R. 404(B). Such evidence is admissible, however, under Evid.R. 404(B) "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In this case, the state has not argued that defendant's prior act tended to show any of those things specifically enumerated in Evid.R. 404(B). Rather, the state

has argued that the prior act tended to disprove defendant's argument that the victim's grandmother planted the allegation of sexual abuse in the victim's mind. The state has contended, in effect, that evidence that defendant may have committed a past act makes it more likely that she also committed the acts at issue in this case and thus that the grandmother did not fabricate the victim's allegations. This argument is precisely what Evid.R. 404 is meant to prohibit. The state could not use evidence of defendant's prior act to prove that she acted in conformity with her character when she allegedly committed the acts at issue in this case.

 Inasmuch as the "other act" evidence was not admitted for any of the purposes specifically enumerated in Evid.R. 404(B), and inasmuch as the state failed to assert any other permissible purpose for its introduction, the trial court erred by receiving it. A trial court's improper admission of other acts evidence, however, does not require reversal of a conviction if there is no reasonable possibility that the evidence contributed to the conviction. *State v. Clemons* (1994), 94 Ohio App.3d 701, 711, 641 N.E.2d 778, 784–785; *State v. Elliott* (1993), 91 Ohio App.3d 763, 771, 633 N.E.2d 1144, 1148–1149. The evidence supporting defendant's conviction of gross sexual imposition and child endangering was substantial enough for this court to conclude that the admission of the other acts evidence was harmless. See Part II(E), *infra*. Defendant's third assignment of error is overruled.

## D

 Defendant's fourth assignment of error is that the trial court incorrectly overruled defendant's motion for a mistrial. Defendant and Napier were tried together. Napier called as a witness a clinical psychologist who had completed an assessment of defendant and the victim in 1994. Napier's attorney asked the psychologist to read from his report information that defendant had given him during the assessment. Defendant objected to the testimony. The trial court overruled the objection based on Napier's assertion that the information would establish that the victim had been molested by a former boyfriend of defendant and that the victim and Napier had a healthy relationship. The psychologist read from his report information that he had acquired from defendant: defendant's biological father was violent and was stabbed to death when she was seven years old, her mother and stepfather physically abused her, her mother was bossy and "always ha[d] to be right," and she was not close to her mother or stepfather. Defendant objected again to this testimony and moved the court for a mistrial. The trial court sustained defendant's objection, but denied her motion for a mistrial.

■■ Defendant has argued that the trial court should have granted her motion for a mistrial because the psychologist's testimony was prejudicial and deprived her of her constitutional right to a fair trial. The decision whether to grant a mistrial lies within the sound discretion of the trial court. *State v. Garner* (1995), 74 Ohio St.3d 49, 59, 656 N.E.2d 623, 634. A mistrial should be declared only when a fair trial is no longer possible. *Id.* at 59, 656 N.E.2d at 634. In this case, the nature of the psychologist's comments was not so egregious that it was impossible for defendant to have had a fair trial after they were made. The trial court, therefore, did not abuse its discretion by denying defendant's motion for a mistrial. Defendant's fourth assignment of error is overruled.

E

■ Defendant's fifth assignment of error is that her convictions of gross sexual imposition and endangering children were not supported by sufficient evidence and were against the manifest weight of the evidence. In determining whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

To determine whether a conviction is against the manifest weight of the evidence:

"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011.

Defendant was convicted of gross sexual imposition, a violation of R.C. 2907.05(A)(4):

"No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact

with the offender; or cause two or more persons to have sexual contact when one of the following applies:

" * * *

"(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."[3]

"Sexual contact" is defined in R.C. 2907.01(B) as:

"[A]ny touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

The jury heard the victim's testimony at trial and watched two video-taped interviews conducted by the DHS caseworker on October 16, 1994, and October 25, 1994. At the October 25, 1994 interview, the victim told the caseworker that Napier, on more than one occasion, forced her to suck defendant's bare breasts while he engaged in oral sex with defendant. The victim testified at trial that Napier forced her to suck on her mother's breasts only one time and that she voluntarily sucked on her mother's breasts a second time because her mother was pregnant and she wanted to "see what the milk tasted like." The victim also told the caseworker at the October 25, 1994 interview that her mother pushed her head away whenever Napier forced the victim to suck on defendant's breasts.

Defendant has argued that her conviction of gross sexual imposition was not supported by sufficient evidence and was against the manifest weight of the evidence because the state failed to prove that she purposely compelled the victim to submit to sexual contact by force or threat of force. Defendant, however, was convicted of violating R.C. 2907.05(A)(4), which requires only that the state prove that the defendant engaged in sexual contact, as defined by R.C. 2907.01(B), with a person under thirteen years old. To properly convict defendant under this statute, the jury had to find that defendant engaged in touching of an erogenous zone with a child under thirteen for the purpose of sexually arousing or gratifying herself or the victim.

The jury's determination that defendant violated R.C. 2907.05(A)(4) was supported by sufficient evidence and was not against the manifest weight of the evidence. The jury could have reasonably inferred from the nature and circum-

---

3. Defendant was also charged with violating R.C. 2907.05(A)(1). The jury, however, specifically found that she did not compel the victim to submit to sexual contact by force or threat of force.

stances of the touching that the defendant's purpose in having the victim suck her bare breasts was to sexually arouse or gratify herself. See *State v. Cobb* (1991), 81 Ohio App.3d 179, 185, 610 N.E.2d 1009, 1012–1013.

Defendant was also convicted of endangering children in violation of R.C. 2919.22(B)(5):

"No person shall do any of the following to a child under eighteen years of age * * *:

" * * *

"(5) Entice, coerce, permit, encourage, compel, hire, employ, use, or allow the child to act, model, or in any other way participate in, or be photographed for, the production, dissemination, or advertisement of any material or performance that he knows or reasonably should know is obscene, is sexually oriented matter, or is nudity-oriented matter[.]"

The victim testified at trial and told her DHS caseworker at the October 16, 1994 interview that defendant and Napier forced her to take pictures of them naked and lifting "their legs up over their heads." She told her psychologist that, in some of the photographs, defendant had her hands on her breasts and genitals and, in others, defendant and Napier were lying together naked on the bed. She stated during the interview and at trial that defendant and Napier never took pictures of her when she was naked and did not force her to take pictures of them having sex.

Defendant has argued that her conviction of endangering children was not supported by sufficient evidence and was against the manifest weight of the evidence because there was no evidence that the victim was ever photographed while she was naked. In support of her argument, she has relied on statutory definitions of "nudity-oriented matter" and "sexually oriented matter." "Nudity-oriented matter" is "any material or performance that shows a minor in a state of nudity and that, taken as a whole by the average person applying contemporary community standards, appeals to prurient interest." R.C. 2919.22(D)(4)(b). "Sexually oriented matter" is "any material or performance that shows a minor participating or engaging in sexual activity, masturbation, or bestiality." R.C. 2919.22(D)(4)(c). Defendant is correct that, given the statutory definitions of "sexually oriented matter" or "nudity-oriented matter," the jury could not have convicted her of forcing the victim to participate in the production of those materials if there was no evidence that a minor appeared in any of the photographs. Defendant, however, has overlooked the fact that the jury could have properly convicted her of violating R.C. 2919.22(B)(5) if it found that she

forced her daughter to participate in the production of material that she knew or reasonably should have known was obscene.

The trial court instructed the jury on the definition of obscenity contained in R.C. 2907.01(F)(1) and (2):

"When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is 'obscene' if any of the following apply:

"(1) Its dominant appeal is to prurient interest;

"(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite[.]"

Based on the victim's descriptions of the photographs she said defendant and Napier forced her to take, the jury could have reasonably inferred that defendant violated R.C. 2919.22(B)(5) by compelling her daughter to participate in the production of obscene materials within the meaning of R.C. 2907.01(F). Accordingly, defendant's conviction of child endangering was supported by sufficient evidence and was not against the manifest weight of the evidence. Defendant's fifth assignment of error is overruled.

## III

Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and SLABY, J., concur.