This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Keith A. Jaynes, appeals from his convictions for felonious assault, vandalism, and endangering children in the Summit County Court of Common Pleas. We affirm.
{¶ 2} On September 10, 2001, the Summit County Grand Jury indicted Defendant on five counts: (1) two counts of felonious assault, in violation of R.C. 2903.11(A)(2); (2) one count of vandalism, in violation of R.C. 2909.05(B)(2); (3) one count of domestic violence, in violation of R.C. 2919.25(A); and (4) one count of endangering children, in violation of R.C. 2919.22(A). A jury trial followed. After the State's case-in-chief, Defendant moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion. Thereafter, the jury found Defendant guilty of two counts of felonious assault, one count of vandalism, and one count of child endangering. The domestic violence count was dismissed. The trial court sentenced him accordingly. Defendant timely appeals raising three assignments of error for review, two of which will be addressed jointly.
 ASSIGNMENT OF ERROR I {¶ 3} "The trial court committed error by failing to grant Defendant's motion for judgment of acquittal on all counts."
 ASSIGNMENT OF ERROR II {¶ 4} "The jury verdict finding [Defendant] guilty of two counts of felonious assault [R.C. 2903.11(A)(2)], one count of vandalism [R.C. 2909.05(B)(2)], and one count of endangering children [R.C. 2919.22(A)] was against the manifest weight of the evidence in violation of the Due Process Clause of the United States Constitution and Article I, Section 16 of the Ohio Constitution."
{¶ 5} In his first and second assignments of error, Defendant challenges the adequacy of the evidence presented at trial. Specifically, Defendant avers that the State failed to present sufficient evidence to support the trial court's denial of his Crim.R. 29 motion for acquittal and that his convictions for felonious assault, vandalism, and endangering children were against the manifest weight of the evidence presented at trial. Defendant's assignments of error lack merit.
{¶ 6} As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386.
{¶ 7} In order to preserve the denial of a Crim.R. 29(A) motion for appellate review, a defendant must enter a timely motion for acquittal. State v. Roe (1989), 41 Ohio St.3d 18, 25. Additionally, "defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence." Statev. Miley (1996), 114 Ohio App.3d 738, 742, citing Dayton v. Rogers
(1979), 60 Ohio St.2d 162, 163, overruled on other grounds by State v.Lazzaro (1996), 76 Ohio St.3d 261. After a careful review of the record, we find that Defendant has waived any objection to the sufficiency of the evidence.
{¶ 8} Specifically, Defendant made a Crim.R. 29 motion at the close of the State's evidence, which the trial court denied. However, Defendant failed to renew his Crim.R. 29 motion for acquittal after presenting his defense. Therefore, Defendant waived any objection under Crim.R. 29 to the sufficiency of the evidence and we need not consider this assignment of error. See Miley, 114 Ohio App.3d at 742, citingRogers, Ohio St.3d at 163. Accordingly, Defendant's first assignment of error is overruled.
{¶ 9} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring).
{¶ 10} When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
{¶ 11} Defendant was found guilty of two counts of felonious assault, in violation of R.C. 2903.11(A)(2), vandalism, in violation of R.C. 2909.05(B)(2), and endangering children, in violation of 2919.22(A).
{¶ 12} Felonious assault is defined as "knowingly * * * caus[ing] or attempt[ing] to cause physical harm to another * * * by means of a deadly weapon." R.C. 2903.11(A)(2). One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Physical harm to persons means any "injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). In addition, a deadly weapon includes "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or * * * used as a weapon." R.C. 2923.11(A). An automobile is a deadly weapon when a driver attempts to run over someone. State v. Pecora (1993), 87 Ohio App.3d 687,691, citing State v. Foster (1979), 60 Ohio Misc. 46.
{¶ 13} Vandalism is defined as "knowingly caus[ing] serious physical harm to property that is owned * * * by a governmental entity." R.C. 2909.05(B)(2). Serious physical harm is "harm to property that results in loss to the value of the property of five hundred dollars or more." R.C. 2909.05(F)(2). The value of the property and the amount of physical harm are determined by the jury or court trying the accused; such finding is returned as part of the guilty verdict. R.C. 2909.11(A).
{¶ 14} Child endangering is defined as "creat[ing] a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A). This offense applies to a parent of a child under the age of eighteen. Id.
{¶ 15} At trial, Officer Kevin Kabellar testified that on August 26, 2001, he and Officer Hackathorn responded to a call from dispatch of a possible domestic dispute at 837 Bertha Avenue. Officer Kabellar stated that upon reaching Bertha Avenue he saw a silver-gray colored Jaguar backing out of the driveway at a high rate of speed. Officer Kabellar asserted that he then activated his lights and sirens and that he stopped the cruiser to see what Defendant would do next. Officer Kabellar further testified that Defendant then "drove directly at our cruiser" and Defendant proceeded to ram the cruiser and pushed the cruiser back even though the brakes were applied. He stated that after Defendant stopped, he put the cruiser in park and exited the cruiser. Officer Kabellar further stated that Defendant then "made direct eye contact and drove his vehicle directly at me. If the cruiser would not have been there, he would have struck me directly." Additionally, Officer Kabellar stated that once it was apparent that Defendant was going to attempt to run over him again, he drew his pistol and fired at Defendant. Officer Kabellar testified that he did not see Defendant's hands in the air until after the shooting ceased and Defendant was out of his vehicle.
{¶ 16} Officer Matthew Hackathorn also testified that he was present in the cruiser that responded to the dispatch call regarding 837 Bertha Avenue on August 26, 2001. Further, Officer Hackathorn stated that as they were approaching Defendant's home, he saw a silver car "driving very erratic" as it pulled out of the driveway and then Officer Kabellar activated the lights and sirens. Officer Hackathorn further stated that Defendant's hands were on the top of the steering wheel; "he was holding on to the steering wheel, his teeth seemed to be gritted." He then declared that "the next thing we know the car turns toward us and crashes into our cruiser * * * [Defendant] was locked in on our cruiser * * * I felt that my eyes and his eyes locked." Officer Hackathorn further declared that after the second impact he felt his life was in jeopardy. Officer Hackathorn also testified to multiple "rammings."
{¶ 17} Vincetta Carter, Mary Tokar and Joseph Zelenko ("Zelenko") all testified that they heard sirens and saw Defendant's car hit the police cruiser. Additionally, Zelenko stated that Defendant's son was in the Jaguar and that he heard Defendant's girlfriend yelling that her son was in the car.
{¶ 18} Officer Jason McKeel testified that he was dispatched to the Bertha Avenue area. He stated that as he was cordoning off the crime scene with tape he found five shell casings. Officer McKeel further stated that there was front end damage to the cruiser and the passenger side door could not be closed. Officer Brent Dube also testified. He asserted that he was called to the crime scene on August 26, 2001 to mark evidence and take photographs and videos. He stated that he took pictures of road debris, vehicle fluids and Officer Hackathorn's smashed eyeglasses. Officer Pat McMillan, a member of the Detective Bureau, testified that he also responded to Bertha Avenue on August 26, 2001. He stated that the "evidence showed somebody else was in the car by the blood trail[;]" namely Defendant's son. Officer McMillan declared that he retrieved the blood splattered child from 760 Bertha Avenue.
{¶ 19} Sergeant Glenn McHenry, a member of the accident investigation reconstruction unit, testified that he examined the cruiser on September 4, 2001. He stated that the license plate had been "busted off," there were black rubber scuffs across the front, radiator fluid splatter patterns, and damage to the right front corner of the cruiser. Sergeant McHenry further stated that there were "no less than five separate contacts" between vehicles.
{¶ 20} Haley Dziados ("Dziados"), Defendants fiancee, testified that she saw Defendant put her son in the backseat of the Jaguar. She also maintained that she heard the police cruiser's tires squealing but did not hear sirens. Dziados stated that after the first impact the officer exited the car, Defendant had his hands in the air, and the officer drew his gun. Dziados noted that she "ran towards [the officer] and * * * told him that my son was in the car."
{¶ 21} James Rollyson ("Rollyson"), a friend of the Defendant, testified that Defendant pulled slowly out of the driveway and that "Defendant was ramming the cruiser[,]" but that Defendant had his hands in the air before he was shot. Rollyson further testified that Defendant's son was in the Jaguar and that he yelled loudly to the officer that Defendant's son was present.
{¶ 22} Lastly, Defendant testified that he put his son in the back seat and that his seat belt was on. Defendant also asserted that he did not back out of the driveway at a high rate of speed and was not in a hurry. Additionally, Defendant stated that once his car was completely in the street, he "looked up [and] there was a police cruiser coming at me." He maintained that the "police cruiser struck my car[.] * * * I believe they impacted my vehicle. I still had my foot on the brake." Defendant testified that the officer then got out of the car with his weapon drawn. Defendant asserted that he did not make contact with the officer, rather, when he saw the gun, he put his hands in the air. He testified that after the shots were fired, he felt that the "only thing [he] could have done was try to get away from the officers." Defendant further testified that his car impacted the cruiser several times so that he could get by it and escape the line of fire. Defendant also conceded that occupants of either car could be injured from a car collision.
{¶ 23} In the case sub judice, the jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. See State v. Lawrence
(Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Defendant on two counts of felonious assault, one count of vandalism, and one count of child endangering. Accordingly, Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III {¶ 24} "The trial court erred by denying [Defendant's] motion for a mistrial subsequent to the presentation to the jury of evidence previously excluded."
{¶ 25} In his third assignment of error, Defendant argues that the trial court abused its discretion by denying his motion for mistrial. We disagree.
{¶ 26} "The essential inquiry on a motion for a mistrial is whether the substantial rights of the accused are adversely affected."State v. Damberger (Aug. 30, 2000), 9th Dist. No. 3024-M, at 4, citingState v. Nichols (1993), 85 Ohio App.3d 65, 69. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Damberger at 4, quoting State v. Franklin (1991),62 Ohio St.3d 118, 127. Due to the variety of circumstances in which a mistrial may emerge, great deference must be given by a reviewing court to the trial court's discretion as the trial court judge is in the best position to assess the situation and determine whether a mistrial is appropriate. State v. Glover (1988), 35 Ohio St.3d 18, 19. A trial court's ruling on a motion for mistrial will be reversed only for an abuse of discretion. Damberger at 4, citing State v. Stewart (1996),111 Ohio App.3d 525, 533, 676 N.E.2d 912. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Damberger at 4, citing Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. Moreover, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court.Damberger at 4, citing Pons, 66 Ohio St.3d at 621.
{¶ 27} The trial court ruled, pursuant to Defense counsel's motion in limine, that evidence regarding Defendant' prior arrests for domestic violence was not to be presented. At trial, the State called Detective John Callahan as a rebuttal witness. During the examination of the State's rebuttal witness, the prosecutor asked the court for permission to play a previously taped interview between Detective Callahan and Defendant. During the interview, Defendant admits that he had previously been arrested for domestic violence. Defendant's counsel, who had refused to listen to the tape before it was played in court, asserted his objection. A portion of the tape was then played. Defendant's counsel approached the bench, the tape was stopped and the motion for mistrial was made. The court again indicated that the State was not to discuss prior acts of domestic violence, but noted that if the door was opened the court would consider allowing evidence of these prior acts. The court then denied the motion, barred playing the remainder of the tape, and provided the jury with a curative instruction.
{¶ 28} Because a jury is presumed to follow the instructions given by the trial court, we cannot say that the short portion of the tape played and the curative instructions adversely affected Defendant's substantial rights and deprived him of a fair trial. See Damberger at 5, citing State v. Garner (1995), 74 Ohio St.3d 49, 59. Accordingly, Defendant's third assignment of error is overruled.
{¶ 29} Defendant's assignments of error are overruled. The convictions in the Summit County Court of Common Pleas are affirmed.
BAIRD, J., BATCHELDER, J. CONCUR.