This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} John Wooden, Appellant, appeals from the decision of the Summit County Court of Common Pleas. We affirm.
 I.
{¶ 2} Appellant was indicted on two counts of rape, in violation of R.C. 2907.02(A)(2), two counts of kidnapping, in violation of R.C.2905.01(A)(4), two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1), one count of attempted rape, in violation of R.C.2923.02 and R.C. 2907.02(A)(2), and one count of burglary, in violation of R.C. 2911.12(A)(1). Appellant pled not guilty to the charges and, on April 25, 2002, the matter proceeded to a jury trial. The jury found Appellant guilty of each count in the indictment, except the burglary charge. The trial court sentenced Appellant and this appeal followed.
 II.
{¶ 3} Appellant raises seven assignments of error. To facilitate review, we will consider the first, second and third assignments of error together.
 A. First Assignment of Error "THE CONVICTION OF THE APPELLANT FOR THE CHARGES OF KIDNAPPING (2 CTS.), GROSS SEXUAL IMPOSITION (2 CTS.), RAPE (2 CTS.), AND ATTEMPTED RAPE (1 CT.) IN THIS CASE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED."
 Second Assignment of Error "THE TRIAL COURT INCORRECTLY DENIED APPELLANT'S MOTION FOR ACQUITTAL IN VIOLATION OF CRIMINAL RULE 29; SPECIFICALLY, THERE WAS NOT SUFFICIENT EVIDENCE TO PROVE THE OFFENSES OF KIDNAPPING, RAPE, GROSS SEXUAL IMPOSITION AND ATTEMPTED RAPE BEYOND A REASONABLE DOUBT AND SUBMIT THEM TO THE JURY."
 Third Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND IN VIOLATION OF CRIMINAL RULE 29(A), ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL."
{¶ 4} First, we will address Appellant's assertion that his convictions were against the manifest weight of the evidence. Next, we will address the assertion that the evidence before the trial court was insufficient to sustain his convictions. Each assigned error lacks merit.
 Manifest Weight
{¶ 5} When determining whether a conviction was against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
{¶ 6} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
{¶ 7} Appellant was found guilty of two counts of rape, in violation of R.C. 2907.02(A)(2), which provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." He was also found guilty of one count of attempted rape, in violation of R.C. 2923.02 and2907.02(A)(2). R.C. 2923.02(A) provides, in relevant part, that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." "Sexual conduct" is defined in R.C. 2907.01(A) as follows:
 "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse; fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
{¶ 8} Appellant was also convicted of two counts of kidnapping, in violation of R.C. 2905.01(A)(4), and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1). R.C. 2905.01 provides, in relevant part, as follows:
 "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
" ***
 "(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victims will[.]"
 "Sexual activity" is defined in R.C. 2907.01 as "sexual conduct or sexual contact, or both."
{¶ 9} In turn, R.C. 2907.05 provides, in pertinent part, as follows:
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 "Sexual contact" is defined in R.C. 2907.01(B) as follows: "`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
{¶ 10} There is no requirement that there be direct testimony regarding sexual arousal or gratification. State v. Cobb (1991),81 Ohio App.3d 179, 185. Absent direct testimony regarding sexual arousal or gratification, the trier of fact may infer that an appellant was motivated by desires for sexual arousement or gratification from the "type, nature and circumstances of the contact, along with the personality of the defendant." Id. at 185.
{¶ 11} In the present case, J.H. testified that she lived on Wilbeth Road in Summit County. She stated that she was born in 1987 and that, when the incidents occurred, she was thirteen years old. Prior to the incidents, J.H. did not know Appellant, but had seen him around the neighborhood. J.H. described the first incident that occurred in January of 2001. She was walking through the field at her school when Appellant approached her and asked for a cigarette. J.H. told him that she did not have any cigarettes but Appellant continued to follow her, telling her that his name was Mike and that he was nineteen years old. Appellant told her that he wanted her to be his girlfriend. When J.H. told him to leave her alone, Appellant grabbed her by her shirt and dragged her to a wooded area. Appellant threw J.H. to the ground and restrained her for three to five minutes while touching her breast and trying to unbutton her pants. J.H. stated that she was able to get away by kicking Appellant.
{¶ 12} J.H. testified that she went home and told her older brother, Kyle Davis, about Appellant's attack. She explained that she was too scared to tell her parents or the police. J.H. also testified that, in March of 2001, she was again walking through the field. She did not know that Appellant was following her but, from a distance, Mr. Davis noticed Appellant approaching. Mr. Davis ran over toward him and asked Appellant what he was doing. Appellant responded that he had lost his drugs and the confrontation ended.
{¶ 13} J.H. testified that, on June 7, 2001, she walked to the Rosemary apartment complex to visit a friend. While at the complex, two men grabbed her and pulled her into an apartment. One of the men was Appellant while the other was an unknown man that J.H. described as "biracial." Appellant was wearing a shirt from an Arby's restaurant. J.H. was told to shut up while Appellant hit her on the leg and on her behind. The other man pulled her head to the ground by her ponytail. Appellant pulled up J.H.'s shirt and bit her breast. Appellant then took off J.H.'s pants and underwear. He placed his fingers in her vagina and laughed. Next, he placed his penis into her vagina, telling her to shut up when she began to scream. Then, he verbally harassed her and attempted to anally penetrate her. The tip of Appellant's penis entered J.H.'s rectum. J.H. indicated that it was painful. At this point, the other man told Appellant to let J.H. go. Appellant again verbally harassed J.H. as she gathered up her clothes, ran out the door, and fell on the grass outside the apartment. At trial, J.H.'s grass stained pants were introduced as evidence.
{¶ 14} J.H. testified that she went home, took a shower and told her brother. She stated that she was too scared and embarrassed to tell her parents or police. She also stated that, following the rape, she bled when she tried to urinate. J.H. testified that, the next morning, her brother convinced her to tell her parents about the rape. Her father immediately called the police and she was taken to the hospital for a physical examination. J.H. stated that she never consented to any of the things that Appellant did to her.
{¶ 15} Mr. Davis, J.H.'s older brother, testified that his sister told him about an incident involving Appellant that occurred in January of 2001. Specifically, she informed him that Appellant had grabbed her and taken her into a wooded area. Mr. Davis stated that, in March of 2001, he was walking around the running track in the field near their house. He observed Appellant approaching his sister from behind so he ran toward the two of them. Mr. Davis stated that he could tell his sister was frightened when she saw Appellant. Mr. Davis testified that he tried to talk with Appellant but that Appellant merely indicated that he had dropped some drugs and ended the conversation. With regard to the June 7, 2001 incident, Mr. Davis stated that his sister told him that Appellant had raped her at the Rosemary apartment complex. He convinced her to tell their parents by the following morning. Mr. Davis indicated that he had picked out Appellant's picture from a photo array.
{¶ 16} Lewis Charles Harden, J.H.'s father, testified that, on June 7, 2001, J.H. came home upset, took a shower, and went to bed at approximately 7 o'clock in the evening. The next morning J.H. informed him that she had been raped. Mr. Harden testified that he immediately called the police and gathered up the clothing that she had worn the day before. He then took J.H. to the hospital where he was told by medical staff that she had been bruised and that it was apparent that she had been raped. Rachel Canter, a shift manager at an Arby's restaurant, testified that Appellant had previously worked at Arby's and that, on June 7, 2001, he had worked in the morning hours.
{¶ 17} Detective Pierre Irvine of the Akron Police Department testified that, when Appellant was arrested, he claimed that he did not know J.H. Appellant also claimed that he was a homosexual and denied all allegations. Detective Irvine stated that a search warrant was executed and police recovered an Arby's shirt from the Appellant's possessions. The detective also stated that J.H. chose Appellant from a photo array without hesitation. Detective Candace Grubb of the Akron Police Department testified that Appellant was thirty-four years old in 2001 and that he originally claimed that he did not know J.H. Appellant also claimed that he was a homosexual but, when reminded that he had a girlfriend, stated that he preferred men over women. Appellant originally gave police a false address. Following the DNA test results, Appellant began to tell police that he and J.H. had engaged in consensual intercourse.
{¶ 18} Detective Grubb testified that J.H. had indicated that Appellant had been wearing an Arby's shirt on June 7th and that, when she first interviewed Appellant, he was wearing an Arby's shirt. She also testified that J.H. had indicated she had cut her finger trying to get out of the apartment and that Detective Grubb had personally observed a cut on J.H.'s finger. Detective Grubb stated that she put together a photo arrangement and both J.H. and Mr. Davis picked out Appellant as the offender. Donna Abbott, a pediatric nurse practitioner at the Children's Hospital Medical Center of Akron, testified that she examined J.H. Ms. Abbott examined J.H.'s hymen and noted that, within the past twenty-four hours, it had been torn in two places and was bruised. There was also evidence of bleeding. Ms. Abbott explained that the injury was a result of penetrating trauma and stated that the event which caused the injury must have been very painful.
{¶ 19} At the hearing, Brenda Gerardi, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation, testified that she conducted a rape analysis with regard to J.H.'s case. Ms. Gerardi testified that she identified semen on the vaginal smears and swabs, as well as J.H.'s underwear. As a result of the analysis, Appellant could not be excluded as a source of the semen. Lynn Bolin testified that she is also a forensic scientist in the same bureau and that she performed a forensic analysis pertaining to this case. Ms. Bolin stated that, based upon a reasonable degree of scientific certainty, the DNA profile from J.H.'s vaginal swab is consistent with Appellant's DNA. Specifically, in her opinion, the semen from the swabs originated from Appellant.
{¶ 20} Appellant testified at trial, denying the charges and contending that he and J.H. had consensual intercourse on June 7th. He stated that he was babysitting one of his children on that day in June and that he invited J.H. to come into an apartment to share a cigarette. He denied that he knew her age.
{¶ 21} Although Appellant presented conflicting testimony, we refuse to overturn the verdict because the trial court believed J.H., whose description of the events was consistent and was corroborated by other witnesses. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. We find no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Appellant of two counts of rape, two counts of kidnapping, two counts of gross sexual imposition, and one count of attempted rape; therefore, we conclude that Appellant's convictions on these counts were not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
 Sufficiency
{¶ 22} A manifest weight challenge determines whether the state has met its burden of persuasion and does not view the evidence in the light most favorable to the state. State v. Leyman (Oct. 4, 2000), 9th Dist. No. 2970-M. Whereas, "[t]he test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."State v. Leggett (Oct. 29, 1997), 9th Dist. No. 18303. We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
{¶ 23} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Having already found that Appellant's convictions were supported by the manifest weight of the evidence, we find that there was sufficient evidence that Appellant did commit the two counts of rape, two counts of kidnapping, two counts of gross sexual imposition, and one count of attempted rape. Accordingly, Appellant's second and third assignments of error are overruled.
 B. Fourth Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT DENIED HIS MOTION TO ALLOW THE JURY TO CONSIDER THE LESSER INCLUDED OFFENSE OF CORRUPTION OF A MINOR."
{¶ 24} In the fourth assignment of error, Appellant asserts that the trial court erred in denying his motion for an instruction on the lesser-included offense of corruption of a minor, a statutory violation now entitled unlawful sexual conduct with a minor, in violation of R.C.2907.04. We disagree.
{¶ 25} The Ohio Supreme Court set out the test for determining whether one offense is a lesser included offense of another:
 "`An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.'" State v. Gabarik (Mar. 14, 2001), 9th Dist. No. 20047, quoting State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
{¶ 26} A lesser included offense instruction is only required where the evidence presented at trial would reasonably support both an acquittal on the crime charged and, also, a conviction on the lesser included offense. Gabarik, citing to State v. Thomas (1988),40 Ohio St.3d 213, paragraph two of the syllabus, and State v. Palmer
(1997), 80 Ohio St.3d 543, 562.
{¶ 27} Rape, in violation of R.C. 2907.02(A)(2), provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The elements of unlawful sexual conduct with a minor are set forth in R.C. 2907.04(A):
 "No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."
{¶ 28} In the present case, Appellant was charged with purposely, by force or threat of force, compelling the victim to engage in sexual conduct in violation of R.C. 2907.02(A)(2). At the hearing, Appellant's counsel requested an instruction on the allegedly lesser-included offense of unlawful sexual conduct with a minor, previously entitled corruption of a minor, when the trial court instructed on rape. The trial court denied the motion, noting that there was an element in such offense which was not included in the rape statute.
{¶ 29} The offense of rape, in violation of R.C. 2907.02(A)(2) as charged in the indictment, does not contain age as an element, as does the offense of unlawful sexual conduct with a minor. Rape, as statutorily defined in R.C. 2907.02(A)(2), can be committed without the offense of corruption of a minor, now entitled unlawful sexual conduct with a minor, as statutorily defined in R.C. 2907.04, also being committed. SeeState v. Fletchinger (1977), 51 Ohio App.2d 73, paragraph one of the syllabus; see, also, State v. Jakobiak (1989), 65 Ohio App.3d 432, 436. Unlawful sexual conduct with a minor is not a lesser-included offense of the crime of rape as charged. Fletchinger, 51 Ohio App.2d at paragraph one of the syllabus; Gabarik. Consequently, Appellant's assigned error is overruled.
 C. Fifth Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY OVERRULING HIS OBJECTIONS TO THE TESTIMONY OF DETECTIVE IRVINE WHICH ALLEGED THAT HE WAS `STALKING GIRLS IN THE NEIGHBORHOOD.'"
{¶ 30} In the fifth assignment of error, Appellant avers that the trial court erred by overruling his objection to certain testimony introduced during trial.
{¶ 31} "`An appellant bears the burden of affirmatively demonstrating error on appeal.'" Hutchison v. Henderson, 9th Dist. No. 20862, 2002-Ohio-4521, at ¶ 39, quoting In re Hiltabidel, 9th Dist. No. 21009, 2002-Ohio-3627, at ¶ 58. An appellant's brief must contain argument and law, "with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). "`If an argument exists that can support this assignment of error, it is not this court's duty to root it out.'" State v. Clifford, 9th Dist. No 20871, 2002-Ohio-4531, at ¶ 15, quoting Cardone v. Cardone (May 6, 1998), 9th Dist. Nos 18349 18673. As Appellant has failed to cite any legal authority that would support his fifth assignment of error, we shall disregard this alleged error. See App.R. 16(A)(7). Accordingly, this Court will not address Appellant's fifth assignment of error.
 D. Sixth Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN DENYING HIS MOTION FOR A MISTRIAL."
{¶ 32} In his sixth assignment of error, Appellant asserts that the trial court erred in denying his motion for a mistrial. Specifically, he asserts that a mistrial was warranted because previously undisclosed state witnesses testified at trial. We disagree.
{¶ 33} "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected." State v.Damberger (Aug. 30, 2000), 9th Dist. No. 3024-M, citing State v. Nichols
(1993), 85 Ohio App.3d 65, 69. "`Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.'"Damberger, quoting State v. Franklin (1991), 62 Ohio St.3d 118, 127. Due to the variety of circumstances in which mistrial may emerge, great deference must be given by a reviewing court to the trial court's discretion as the trial court judge is in the best position to assess the situation and determine whether a mistrial is appropriate. State v.Glover (1988), 35 Ohio St.3d 18, 19. A trial court's ruling on a motion for mistrial will be reversed only for an abuse of discretion.Damberger, citing State v. Stewart (1996), 111 Ohio App.3d 525, 533. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
{¶ 34} At trial, Appellant moved for a mistrial based upon undisclosed witnesses and evidence. On April 26, 2002, Appellant argued that he had not known that individuals had indicated that they had seen Appellant sometime in the summer at the apartment complex where the victim was allegedly raped. The state responded that it had not known that one of the state's witnesses, Detective Irvine, would indicate that two individuals, Ray Bowens and Linda Craig, had seen Appellant at some point at the apartment complex. The state indicated that it had not been aware of these individuals but that it would correct the situation and subpoena them immediately. The trial court ordered the state to provide full discovery with regard to the individuals and ensure that Appellant had the opportunity to interview such individuals prior to any further testimony.
{¶ 35} Thereafter, on April 30, 2002, Appellant again asserted that he was entitled to a mistrial, referring to undisclosed testimony and evidence. The state reiterated that it also had not been aware of the testimony. The state indicated that the individuals in question could not place Appellant at the apartment complex on the day in question but could only generally remember seeing him sometime in the summer, and, also, that Appellant had been claiming consent with the victim. The trial court denied the motion for a mistrial, noting that Appellant's counsel had met with the prosecutor's investigator and, also, was provided with a police report on the matter. The court also noted that Appellant had been given the opportunity to review anticipated witnesses and testimony and found that there was no prejudice to Appellant. Thereafter, Mr. Bowens only was called as a state's witness. While in his brief Appellant generally alleges that he was prejudiced by "surprise witnesses," his argument is limited to the one witness who testified, Mr. Bowens.
{¶ 36} Mr. Bowens testified that he was the maintenance man at the apartment complex and that he had observed Appellant at the complex more than once during the past summer. He stated that he had not seen Appellant with any young females and that he could not remember the exact days he had observed Appellant at the complex. Later, Appellant testified on direct examination that he had lived in the area of the apartment complex for a year and a half.
{¶ 37} Upon review of the record, we find that the trial court acted within its discretion in permitting Mr. Bowens to testify and in overruling Appellant's motion for a mistrial. The state learned of the individuals at issue only after trial had already commenced. Following this discovery, the state indicated that it would immediately subpoena the individuals and the trial court ordered full discovery, as well as an opportunity to interview the individuals referred to by the state's witness, Detective Irvine. Appellant's counsel was provided several days to prepare, met with the prosecutor's investigator, was provided with the police report, and was given a chance to review the anticipated witnesses and testimony. Moreover, the witness at issue, Mr. Bowens, merely stated that he had observed Appellant at the apartment complex sometime during the previous summer. Under these circumstances, we cannot say that Appellant was prejudiced or denied a fair trial. The sixth assignment of error is overruled.
 E. Seventh Assignment of Error "THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO CONSECUTIVE TERMS OF INCARCERATION AND IMPROPERLY FOLLOWED THE PROCEDURE IN IMPOSING THE SENTENCE PURSUANT TO THE FELONY SENTENCING GUIDELINES SET FORTH IN R.C. CHAPTER 2929."
{¶ 38} In the seventh assignment of error, Appellant asserts that the trial court erred in imposing a consecutive sentence because it did not make the appropriate findings pursuant to R.C. 2929.14(E). We disagree.
{¶ 39} R.C. 2929.14(E) states in pertinent part:
 "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
{¶ 40} A sentencing court must make findings and give its reasons to support the imposition of consecutive sentences. State v. Riggs (Oct. 11, 2000), 9th Dist. No. 19846. "In Riggs this Court concluded that [State v. Edmonson (1999), 86 Ohio St.3d 324] requires a court to use some language that is close, if not identical, to the statutory criteria when articulating its findings." State v. Alfono, 9th Dist. No. 02CA0063-M, 2003-Ohio-237, ¶ 36. If a trial court fails to make the required findings, the appellate court "shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings." R.C. 2953.08(G)(1).
{¶ 41} In the present case, at the sentencing hearing, the trial court gave reasons to impose consecutive sentences. Specifically, the trial court stated:
 "This Court having heard the evidence, based on the jury verdicts, based on the record of the defendant, based upon the conduct observed in this courtroom, Court considers that consecutive sentences are necessary for the protection of the public.
 "Court finds that consecutive sentences are not disproportionate to the seriousness of the offense.
 "Court finds that no single prison term absolutely reflects the seriousness of the defendant's conduct in this case.
 "Having considered the criteria applicable, this Court also notes impact upon the defendant — impact upon the victim in this case, and the good of this community."
{¶ 42} Furthermore, the judgment entry contains the findings that consecutive sentences were necessary to protect the public and punish Appellant, that consecutive sentences were not disproportionate to Appellant's conduct and the danger he poses, and the harm caused was so great or unusual that a single term does not adequately reflect the seriousness of the conduct.
{¶ 43} The trial court made appropriate findings at Appellant's sentencing hearing and, also, properly journalized its findings in the judgment entry. Given both the statements made on the record at the sentencing hearing and the findings in the judgment entry, this Court affirms the sentencing. The seventh assignment of error is overruled.
 III.
{¶ 44} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
SLABY, P.J. and CARR, J. CONCUR.