DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Michael D. Moore, appeals from the judgment of the Wayne County Court of Common Pleas which convicted him of rape and adjudicated him a sexual predator. We affirm.
 {¶ 2} On September 19, 2002, Defendant was indicted on one count of rape, in violation of R.C. 2907.02(A)(2). Defendant pled not guilty and the matter proceeded to trial. The trial court found Defendant guilty, classified him as a sexual predator, and sentenced him to six years in prison. Defendant timely appealed raising four assignments of error. The assignments of error have been consolidated and rearranged for purposes of review.
 ASSIGNMENT OF ERROR II
"The trial court erred in failing to grant [Defendant's] motion for acquittal, Crim.R. 29(A)."
 ASSIGNMENT OF ERROR III
"The judgment of the trial court is against the manifest weight of the evidence."
 {¶ 3} In his second and third assignments of error, Defendant alleges that there was insufficient evidence to convict him of rape. Additionally, Defendant contends that his conviction was against the manifest weight of the evidence. Defendant's contentions lack merit.
 {¶ 4} As a preliminary matter, we note that the sufficiency of the evidence produced by the State and the weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 5} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 6} Defendant was found guilty of rape. R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The force necessary to commit the crime of rape may be subtle and psychological; "`[a]s long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" State v. Daniel (Sept. 13, 2000), 9th Dist. No. 19809, at 9, quoting State v. Eskridge (1988),38 Ohio St.3d 56, 59.
 {¶ 7} In the instant matter, Latonya Palmer ("Palmer") offered her testimony at trial. Palmer indicated that she had known Defendant for the past three years; they met through their mutual friend, "Dittyboo." Occasionally, she and Defendant would "party" together. Palmer admitted that these parties included drinking and smoking crack. Palmer maintained that she and Defendant did not have a sexual relationship.
 {¶ 8} Palmer testified that in March of 2002, she saw Defendant at the Wooster Municipal Court. They spoke of "getting [their] lives together" but did not make any plans to meet in the future. Thereafter, on March 19, 2002, she received a phone call from Defendant. Defendant informed Palmer that he had some drugs and invited her over to his apartment. Palmer accepted his invitation and met Defendant at his apartment. Palmer asserted that Defendant took her to his room as there was a young boy out in the living area. She indicated that the boy was the brother of Defendant's roommate. Once inside, Defendant revealed that he used all of the crack and no longer had any for Palmer. Defendant asserted that he could go next door and make a phone call to obtain more crack. When Defendant's attempt was unsuccessful, Palmer decided to leave as she "was trying to remain abstinence." Defendant then went home to her own apartment for dinner.
 {¶ 9} A short while later, Defendant again called Palmer and told her that this time the crack was "a for sure thing" and to come and give him a ride. Palmer complied and drove Defendant to a residence on North Street. After obtaining the crack, Palmer and Defendant returned to Defendant's bedroom and began smoking. Palmer testified that Defendant then began to touch her breasts. She recalled that when she told him to stop, he became agitated and stated "if it was [his] brother [she] would do it." Palmer explained that she previously had a relationship with Defendant's brother. Thereafter, Defendant left the room. Palmer remembered hearing the front door to the apartment open and close and assumed that the young boy had left.
 {¶ 10} Palmer testified that when Defendant returned, he was holding a butcher knife. He then ordered her to take her clothing off. She maintained that Defendant held the knife to her throat and told her that if she made any noise "he would kill [her] and he would chop [her] body up and throw it in the river." Palmer stated that she complied as she felt that she had no choice. Defendant then "told [Palmer] to suck his dick." Again, Palmer asserted that she felt she had no choice and stated that she performed oral sex on Defendant. Palmer recalled that Defendant continuously threatened her and never set the knife down.
 {¶ 11} Roughly ten minutes later, Defendant's roommate, Shawn Ray ("Ray"), entered the apartment. Defendant told Palmer not to leave the bedroom, that he was going to get more crack, and then left. Palmer testified that she quickly got dressed and attempted to exit the room. However, Defendant returned and the two "struggl[ed] over the door[;]" she was trying to open the door and he was trying to close it. Palmer explained that when she screamed Defendant released his grip on the door. Palmer escaped to the kitchen and stood next to Ray. She testified that Defendant started apologizing and began to coax her back into the bedroom with the crack. He asserted that "it" would not happen again and stated that he no longer had the knife. Palmer admitted that she was tempted by the drugs and began to re-enter his room. Defendant then wielded the knife, which was hidden behind his back. Palmer stated that she ran out of the bedroom and completely exited the apartment. As Palmer was sitting in her car, Ray came outside. Palmer explained to him what had occurred. Ray then confronted Defendant with the allegations and Defendant denied any wrongdoing.
 {¶ 12} Palmer did not report this incident to the police until two weeks later. She explained that she did not want Defendant to come after her and was concerned about revealing her substance abuse problem. Additionally, Palmer testified that she has never given Defendant money to purchase crack for her, nor were there any financial disputes between herself and Defendant.
 {¶ 13} Detective Terry Heim obtained a written statement from Defendant. In the statement, Defendant admitted that he and Palmer smoked crack at his apartment on Mach 19, 2002. However, he denied producing a knife and stated that he did not ask Palmer to take her clothes off and perform oral sex on him. Defendant maintained that Palmer was upset with him because she had given him $500 to buy her some crack. Defendant indicated that he purchased the drugs for himself and did not give any to Palmer.
 {¶ 14} Gilkerson, also testified at trial. He recalled that Defendant sought his advice while the two were incarcerated (Defendant was in prison on unrelated charges). Defendant was notified that he was under investigation for rape and had learned that a detective wanted him to take a lie detector test. Gilkerson stated that "[Defendant] asked [him] if he thought he should" take the test. Gilkerson responded that he would never take one.
 {¶ 15} Later that same day, Defendant returned to Gilkerson's cell and asserted that "he made the bitch suck his dick." However, Gilkerson explained that Defendant did not think he would be found guilty because "[Palmer] was a crack hoar [sic] and it was her word against his." Gilkerson recalled that Defendant asserted he was going to tell the detective that Palmer was lying because she was mad at Defendant for taking her $500 and spending it on himself rather than purchasing the drugs for her.
 {¶ 16} Gilkerson stated that he informed the police that he had information regarding the rape but indicated that he wanted to wait until he was out of jail to give a formal statement. He was concerned about being known as a "snitch" while still incarcerated. Gilkerson served his full sixty days in jail for driving under the influence and signed his statement regarding the conversations with Defendant the day after he was released. Gilkerson maintained that he revealed the information due to the fact that he has a wife and three young girls and is not tolerant of rape.
 {¶ 17} Additionally, Robert Byrd ("Byrd"), Gilkerson's cellmate, testified. Byrd stated that he overheard Defendant explaining to Gilkerson that he "forc[ed] a girl[,]" but did not know any specific details about the incident. Byrd did assert, however, that he was surprised to hear that Defendant would do such a thing, and was not sure if it was simply "jail talk."
 {¶ 18} After careful review of the record, we are unable to conclude that the trier of fact lost its way and created a manifest miscarriage of justice when convicting Defendant of rape. Although conflicting testimony was presented, we refrain from overturning the verdict because the jury chose to believe testimony that was damaging to Defendant. Although conflicting evidence may be presented at trial, a conviction will not be overturned as against the manifest weight of the evidence merely because the trier of fact believed the prosecution testimony. State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Consequently, Defendant's conviction was not against the manifest weight of the evidence.
 {¶ 19} This Court has previously observed that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts
(Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. As we have already determined that Defendant's conviction was not against the manifest weight of the evidence, we necessarily conclude that there was sufficient evidence to support the verdict in this case. Accordingly, Defendant's second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR I
"The trial court erred as a matter of law by failing to sustain [Defendant's] motion for mistrial when in its opening statement the State made reference to Defendant considering a polygraph test and then later questioned Isaac Gilkerson about the polygraph test."
 {¶ 20} In his first assignment of error, Defendant argues that the trial court erred in failing to grant a mistrial after references were made, by the State, to a polygraph test. We disagree.
 {¶ 21} The essential inquiry a trial court is to make when entertaining a motion for mistrial is whether the substantial rights of the accused have been adversely affected. State v. Damberger (Aug. 30, 2000), 9th Dist. No. 3024-M, at 4, citing State v. Nichols (1993),85 Ohio App.3d 65, 69. A mistrial is necessary only when a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127. Great deference is afforded to a trial court's decision regarding a motion for mistrial and the court's ruling will be reversed only upon the showing of an abuse of discretion. State v. Stewart (1996),111 Ohio App.3d 525, 533. An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 22} At trial, Defendant moved for a mistrial based upon the State's references, in its opening statement and upon examination of a witness, to a polygraph test. Although Defendant is correct in stating that the results of a polygraph are inadmissible unless the parties stipulate in writing to the admission of the results, this doctrine is inapplicable to the present matter. See State v. Jamison (1990),49 Ohio St.3d 182, 190.
 {¶ 23} In opening statements, the State referred to the fact that Defendant sought Isaac Gilkerson's ("Gilkerson") advice regarding the possibility of taking a polygraph test. Specifically, the prosecutor indicated that "Defendant wanted to know if he should take a lie detector test." Additionally, while examining Gilkerson the prosecutor inquired as to why Defendant had approached the witness. Gilkerson responded, "[Defendant] had a detective notify him that he was getting investigated for rape. And that the detective wanted him to take a lie detector test. And he asked me if he thought he should." Defense counsel timely objected to both references. However, his objections were overruled.
 {¶ 24} Upon review of the record, we find that the trial court acted within its discretion in overruling Defendant's motion for a mistrial. The State's brief mention of the test in the context of Defendant's conversation with Gilkerson, without further development, was not prejudicial to Defendant. No results of any polygraph examinations were referenced or admitted and the record does not indicate that Defendant even took or refused to take such an examination. Furthermore, the conversation demonstrates the relationship between the Defendant and Gilkerson and adds credibility to Gilkerson's statements. Under these circumstances we cannot say that Defendant was prejudiced or denied a fair trial. See State v. Hubbard, 150 Ohio App.3d 623, 2002-Ohio-6904, at ¶ 39; State v. King (July 10, 1997), 4th Dist. No. 96 CA 39 (finding that the defendant was not prejudiced where none of the references stated the result of any polygraph examination the defendant might have taken). Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"The trial court erred to the prejudice of [Defendant] when it classified him as a sexual predator even though the State failed to show by clear and convincing evidence that [Defendant] was likely to engage in the future in one or more sexually oriented offenses."
 {¶ 25} In his final assignment of error, Defendant challenges the trial court's finding that he is a sexual predator. Specifically, Defendant avers that the State failed to prove by clear and convincing evidence that he is likely to commit a sexually oriented offense in the future. We disagree.
 {¶ 26} When reviewing a trial court's sexual predator adjudication, an appellate court is to apply the clearly erroneous standard. State v. Unrue, 9th Dist. No. 21105, 2002-Ohio-7002, at ¶ 6. Thus, a sexual predator designation will not be reversed as long as there is "`some competent, credible evidence'" to support the determination. State v. Clark, 9th Dist. No. 21167, 2003-Ohio-94, at ¶ 5, quoting State v. Groves, 7th Dist. No. 853, 2002-Ohio-5245, at ¶ 41. This standard is highly deferential, and even "some" evidence is sufficient to sustain a judgment and prevent a reversal; an appellate court is "guided by a presumption that the findings of a trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony."Spinetti v. Spinetti (Mar. 14, 2001), 9th Dist. No. 20113, at 7-8. See, also, Unrue at ¶ 9. A reviewing court should not substitute its judgment for that of the trial court where competent and credible evidence supports the trial court's findings. Clark at ¶ 7, citingWisintainer v. Elcen Power Strut Co. (1993), 67 Ohio St.3d 352, 355.
 {¶ 27} One is deemed a sexual predator if he has "been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E)(1). Accordingly, the initial inquiry, which involves a question of law, is whether the defendant has been convicted of or has pleaded guilty to a sexually oriented offense. Clark at ¶ 6. The court then must make a factual inquiry as to the defendant's likelihood to reoffend. Id. The State bears the burden of proving these elements by clear and convincing evidence. R.C. 2950.09(B)(4); State v. Eppinger
(2001), 91 Ohio St.3d 158, 163. Clear and convincing evidence is the level of proof greater than a preponderance of the evidence but less than the certainty of beyond a reasonable doubt, as required in criminal cases. State v. Schiebel (1990), 55 Ohio St.3d 71, 74, quoting Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 28} When determining the likeliness of a defendant to reoffend, the trial court is to consider all relevant factors, including, but not limited to:
"(a) The offender's * * * age;
"(b) The offender's * * * prior criminal * * * record regarding all offenses, including, but not limited to, all sexual offenses;
"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed[;]
"(d) Whether the sexually oriented offense for which sentence is to be imposed * * * involved multiple victims;
"(e) Whether the offender * * * used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
"(f) If the offender * * * previously has been convicted of or pleaded guilty to * * * a criminal offense, whether the offender * * * completed any sentence * * * imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender * * * participated in available programs for sexual offenders;
"(g) Any mental illness or mental disability of the offender * * *;
"(h) The nature of the offender's * * * sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
"(i) Whether the offender * * *, during the commission of the sexually oriented offense for which sentence is to be imposed * * *, displayed cruelty or made one or more threats of cruelty;
"(j) Any additional behavioral characteristics that contribute to the offender's * * * conduct." R.C. 2950.09(B)(3).
 {¶ 29} In making its determination, although the court is to consider each factor, it is not required to mention each factor in its analysis. State v. Alexander (Apr. 14, 1999), 9th Dist. No. 18823, at 5-6. "Furthermore, the factors need not be weighed or balanced, nor does the determination of sexual predator status demand that a majority of the factors listed weigh against the defendant." Clark at ¶ 20, citingState v. Francis (June 16, 1999), 9th Dist. No. 18791, at 6.
 {¶ 30} At the sexual offender hearing, the trial court determined that Defendant was a sexual predator based upon several factors. Initially, the court voiced its concerns regarding the conclusions reached by Dr. James F. Sunbury in a report from the Forensic Diagnostic Center; "[t]he conclusion * * * is that there are several factors suggesting a high risk to reoffend including [Defendant's] past record, alcohol dependence and a relative lack of remorse." The court indicated that it had also considered Defendant's extensive criminal record, dating back to 1981, his long history of substance abuse problems, and the fact that Defendant "had a butcher knife which he brandished and compelled the victim to perform oral sex on him." The court was also concerned that Defendant revealed to Dr. Sunbury that he had been accused of rape on two other occasions.
 {¶ 31} Upon review, we conclude that there was competent, credible evidence to support the trial court's determination that Defendant was likely to reoffend and thus should be adjudicated a sexual predator. Accordingly, Defendant's fourth assignment of error is overruled.
 {¶ 32} Defendant's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Baird, J. and Batchelder, J., concur.