DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Caraletta M. Mingo, has appealed from her conviction for theft, rendered by a jury in the Medina County Court of Common Pleas. We affirm.
 I {¶ 2} On December 18, 2002, Appellant was indicted on one count of theft, in violation of R.C. 2913.02(A)(1) and/or (A)(3). Appellant entered a plea of not guilty, and the matter proceeded to a jury trial, which began on July 28, 2003. The jury found Appellant guilty of complicity to commit theft, in violation of R.C. 2913.02(A)(1). Additionally, the jury found that the stolen property had a value of at least $500, thereby classifying the offense as a felony of the fifth degree. On September 19, 2003, the court sentenced Appellant to six months in prison.
 {¶ 3} Appellant timely appealed, raising two assignments of error.
 II Assignment of Error No. 1
"The jury's verdict is not support[ed] by sufficient evidence and it is against the manifest weight of the evidence."
 {¶ 4} In her first assignment of error, Appellant contends that her conviction for theft is against the manifest weight of the evidence and is not supported by sufficient evidence. We disagree.
 {¶ 5} As a preliminary matter, we note that sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. Id. at 390 (Cook, J., concurring).
 {¶ 6} On review of the sufficiency of the evidence, "`the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Williams, 99 Ohio St.3d 493,2003-Ohio-4396, at ¶ 50, quoting Jackson v. Virginia (1979),443 U.S. 307, 319.
 {¶ 7} When a defendant asserts that the conviction is against the manifest weight of the evidence, an appellate court must:
"review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 8} Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted). State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 9} R.C. 2913.02(A)(1) provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * Without the consent of the owner or person authorized to give consent." R.C. 2923.03 provides, in relevant part, that one is "guilty of complicity in the commission of an offense" if, while "acting with the kind of culpability required for the commission of an offense," he "aid[s] or abet[s] another in committing the offense."
 {¶ 10} The theft charge against Appellant arose from an excursion to the Prime Outlet Mall in Lodi. On December 5, 2002, the Appellant went to that mall with Delores Carson and Letocia Taylor. While there, the three women visited several retail stores, including Carter's and Nautica. The three were later charged with stealing several articles of clothing from those two stores.
 {¶ 11} At trial, the State called seven witnesses: three store clerks; three investigating police officers; and Delores Carson. Calling no other witnesses, the Appellant testified on her own behalf. The testimony of the witnesses provides the following accounts of the events culminating in the theft charge against the Appellant.
 {¶ 12} Delores Carson testified that, while the three women did not discuss their intentions to steal during the course of their drive to the mall, each of them understood that this was the purpose of the outing. After arriving at the mall, the trio proceeded to the Nautica store, where David Webster and Marlena Gengo were working.
 {¶ 13} Webster testified that he was at the store when the three women entered, and that they proceeded to act in what he and Gengo perceived to be a "suspicious manner." He explained that the three women "made it quite clear" that they did not want him to assist them. Furthermore, according to Webster, the Appellant and one of her companions each carried shopping bags from "The Gap." Webster testified that, while there was a Gap store at the mall, the bags carried by the two women looked "very different" from the new bags distributed by that store, in that they were wrinkled and torn. He further testified that, in his opinion, the bags were "very old," and had been reused, and that the bags appeared fuller when the women left the store than they did when they first entered. Finally, Webster testified that, after the three women left the store, he and his co-workers examined the area where the three had been standing, and discovered a pile of security tags that had been removed from merchandise.
 {¶ 14} Gengo testified that the three women entered the store just as she and her co-workers were preparing to close the store. Gengo corroborated Webster's testimony that the store employees grew mistrustful of the women, testifying that she suspected that one of the women was attempting to command her attention in an effort to distract her from the Appellant and the third companion, who were standing in an area of the store where shoplifting tends to occur. Like Webster, Gengo testified that the Appellant and the woman standing with her in that area were both carrying Gap bags, and that, after the three women left the store, she and her co-workers examined the area where the women had been standing and discovered security tags that had been removed from merchandise.
 {¶ 15} Delores Carson disagreed with Webster and Gengo's descriptions of the Nautica store episode. Carson testified that neither she nor either of her two companions carried Gap bags into the Nautica store. Furthermore, Carson testified, the Appellant did not carry a Gap bag at any time during the trio's visit to the mall. Lastly, Carson testified that she was still in the store when Webster and Gengo discovered the security tags.
 {¶ 16} Appellant disagreed with the testimony of Webster, Gengo, and Carson. First, Appellant testified that as she traveled to the mall, she was unaware of any plan to steal, and that she remained unaware of the plan as the stealing occurred. Appellant also testified that she did not believe that she acted in a suspicious manner, but that she simply searched through a pile of clothing in order to find a correct size, and then purchased the merchandise she selected. Appellant testified that after paying for the items, she separated from her two companions, later reuniting with them at the Carter's store.
 {¶ 17} Paulette White was working at the Carter's store on the evening of December 5, 2002. She testified that, at around 8:00 that evening, three women entered the store, each carrying approximately three "beat up" Gap bags. White testified that the women were together at first, but then split up and went to the back of the store. The women were "real quiet," according to White, and moved away from White anytime she attempted to approach them. White testified that, following a brief conversation with Appellant regarding the price of a sweater, she observed the Appellant and one of her companions proceed to the store counter, where Appellant's companion purchased two items. During this transaction, according to White, the third companion began exiting the store, and triggered a security sensor. White testified that she asked the third woman to bring her bag back in for desensitization or inspection, but the woman ignored her and exited the store. Then, according to White, the two other women stepped in front of White and "kind of blocked" her, leaving her unable to pursue their companion. The two women soon "disappeared" from the store, White testified, subsequently driving off in a red sports utility vehicle. White testified that after the trio left the store, she discovered, in the spots where she had observed the three women standing, some security tags that had been removed from merchandise.
 {¶ 18} Delores Carson disagreed with White's testimony regarding the Gap bags. Carson testified that she and Taylor carried only one Gap bag apiece, not three, and that the Appellant did not carry any Gap bags at all. Carson testified that after she and her companions did some shopping in the Carter's store, she purchased some baby socks and a sleeper for the Appellant.
 {¶ 19} Carson also testified that the Appellant handed her a couple of baby outfits. When asked whether the Appellant instructed her to "put [the outfits] in the bag," Carson testified that "[the Appellant] didn't tell me, I knew what to do with them." Carson then acknowledged that the outfits were "being stolen." Carson testified that the security buzzer went off as she exited the Carter's store. Carson testified that after this happened, she ran to the car and waited for her companions, who soon joined her.
 {¶ 20} Like Carson, the Appellant testified that she did not carry any Gap bags into the Carter's store, contrary to White's account. Appellant testified that, after shopping around for a short while and engaging in a brief conversation with White, she and Carson proceeded to the register to purchase a nightgown and socks. Appellant testified that after the transaction, she and her two companions began to leave, and that the alarm went off as Carson and Taylor passed through the door. Contradicting White, Appellant testified that she did not attempt to block White and prevent her from approaching her companions. After repeating her testimony that she had no knowledge of an agreement to steal, and that she was not aware of the stealing as it took place, the Appellant testified that she did not give Carson any merchandise to put into her bag. Appellant testified that, after attempting to convey to Carson that White wanted to inspect her bags and, assuming that the contents had been paid for, to desensitize any attached security tags, she joined her two companions in their car and drove away.
 {¶ 21} At this time, according to their testimony, White and Gengo each walked out of their respective stores and into the parking lot, following the three women. White and Gengo recorded the license plate number of the vehicle occupied by the trio, and then contacted the police.
 {¶ 22} Deputy Chad Meyers of the Medina County Sheriff's Office testified that, on December 5, 2002, he and Deputy Dave Porter, also of the Medina County Sheriff's Office, had just finished a late lunch in the food court of the mall when they received a radio transmission from the dispatch center alerting them that a theft had just occurred at the Nautica store. The officers were provided with the license plate number recorded by White and Gengo, along with descriptions of the three suspects and the vehicle they drove away in. Deputy Meyers testified that he responded to the store on foot, while Deputy Porter patrolled the parking lot in his vehicle.
 {¶ 23} After learning that the vehicle driven by the suspects was registered in the Akron area, Deputy Meyers contacted Officer Ivan Reed of the Seville Police department, and asked him to watch for the vehicle. Officer Reed testified that, after receiving the call from Deputy Meyers, he proceeded to I-76, where he soon spotted and stopped a vehicle matching the description he had received.
 {¶ 24} Officer Reed testified that Delores Carson was driving the car, and that he asked her to step out and have a seat in the back of his car. While she was in the police car, according to Officer Reed, Carson began speaking to someone on her cellular phone, asking the person for bond money even though she had not yet been informed of the reason for the stop.
 {¶ 25} Officer Reed began questioning the Appellant and Taylor, and asked them about several shopping bags contained in the vehicle. First, he asked the Appellant whether she had a receipt for the items contained in the bag she held in her hand; Officer Reed testified that she did have the receipt, and that he then directed his attention to two bags lying in the back seat of the vehicle. Officer Reed testified that he observed that the items sticking out of one of the bags had Carter's tags, and that, after he inquired about the bags, the Appellant and Taylor claimed that those bags were already the car when they first got in.
 {¶ 26} Deputy Porter and Deputy Meyers then arrived at the scene. Deputy Porter testified that when he arrived, he began speaking to the two passengers in the stopped vehicle. He testified that he observed two large Gap bags containing children's clothes lying in the back seat of the car, and that both Appellant and Taylor claimed that the bags were in the car when they were first picked up in Akron. Deputy Porter testified that he then spoke with Carson, who was sitting in the back of Officer Reed's car. After being advised of her Miranda rights, according to Deputy Porter, Carson said "it was pointless of lying, they were going to jail, all three took the clothes, and she didn't want to be charged with it all."
 {¶ 27} Deputy Meyers also spoke with the three women. Deputy Meyers testified that when he spoke with Taylor and the Appellant, each stated that they neither knew of nor participated in the theft. However, according to Deputy Meyers, Carson contradicted those statements. Deputy Meyers testified that when he spoke with Carson, she claimed that all three women were involved in the theft. Deputy Meyers further testified that Carson asked him whether each of the women could be held accountable for only those items which they personally stole, and that he explained to her that he "believed they were working in concert together, and that they were all going to be charged equally."
 {¶ 28} The three women were then arrested and transported to the Medina County Sheriff's Office.
 {¶ 29} Carson testified that she pled guilty to the felony theft charge that followed her arrest. Carson confirmed Deputy Meyers' testimony regarding her proposal that each of the women be charged only for those items they personally stole, testifying that she "felt like we should all take what was ours, and it would be broke down to a misdemeanor instead of charging everybody with a felony." Carson correlated the stolen items to the person she believed to be responsible for them, testifying that the Appellant stole five or six items from Carter's; that Taylor stole a jacket from Nautica, along with several items from Carter's; and that she herself also stole several items from Carter's.
 {¶ 30} Finally, the Appellant offered her account of the events following the traffic stop initiated by Officer Reed. The Appellant testified that, after a police officer stopped the car and removed Carson, several other officers approached the car, where she and Taylor remained, and began speaking with them. Appellant testified that the officers asked to see the receipts for the items contained in the bags she had with her in the front seat, and that she produced those receipts. Then, Appellant testified, the officers began inquiring about the bags in the back seat of the car. Appellant testified that she told the officers that the bags were not hers and that she did not know anything about them. When Taylor offered the same disavowal of ownership and knowledge, testified Appellant, she first became aware that "something was wrong."
 {¶ 31} At this point, Appellant testified, she and Taylor were removed from the car and placed into a police car. The two then began to argue, according to Appellant. Appellant testified that Taylor urged her to claim that she was involved in the theft, "so they can divide all the stuff up in threes, and we can all have a misdemeanor instead of a felony." Appellant testified that she told Taylor that she "didn't like" this idea, and that her criminal record was "bad enough without taking on responsibility [for] somebody else's actions."
 {¶ 32} In addition to the testimony of its six witnesses, the State introduced two exhibits: two bags, along with their contents. White testified that one of the bags, marked as Exhibit 1, was similar to the Gap bags she observed the women carrying on the night of December 5, 2002, and that the bag also looked like the Gap bag shown to her by sheriff's deputies when she gave her statement to them. She then testified that the items contained in the bag were the property of the Carter's store where she worked; that none of the three women had purchased any of the items on December 5, 2002; and that none of the three women were authorized by the Carter's store to remove those items from the store. David Webster was presented with the other bag, marked Exhibit 2. He testified that Exhibit 2 was one of the bags that sheriff's deputies brought into his store following the incident, and that the bag contained a jacket, which he recognized as merchandise from the Nautica store. Webster further testified that the jacket was not paid for in the Nautica store on December 5, 2002, and that none of the three women purchased the jacket that day. Gengo was also presented with Exhibit 2. Like Webster, she testified that the bag contained a jacket from the Nautica store, and that she had confirmed, through a register journal, that the jacket was not sold by her store on December 5, 2002.
 {¶ 33} Following closing arguments, the trial court instructed the jury on the law relating to theft, as well as the law relating to complicity. The jury found Appellant guilty of complicity to commit theft.
 {¶ 34} After a careful review of the record, we are unable to conclude that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." The Appellant did testify that she was unaware of a plan to steal, had no knowledge of the stealing as it was going on, and did not steal anything herself. However, Delores Carson unequivocally implicated the Appellant in the theft, not only in her testimony at trial, but also in her prior statements to Deputy Meyers and Deputy Porter. Summarizing those prior statements, the two officers presented them to the jury as part of their own testimony. Moreover, the three employees of the victim retail stores each testified that they suspected that all three women were involved in a collaborative strategy to steal from their stores. Evidently, the jury chose to credit the testimony of Carson, Deputy Meyers, Deputy Porter, and the three store employees. The mere fact that the jury chose to believe their testimony rather than the Appellant's does not render the guilty verdict against the manifest weight of the evidence. See State v. Moore, 9th Dist. No. 03CA0019, 2003-Ohio-6817, at P18, citing State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
 {¶ 35} We find that the verdict was not against the manifest weight of the evidence. Implicit within this finding is our determination that the verdict was supported by sufficient evidence. Accordingly, the Appellant's first assignment of error is overruled.
 Assignment of Error No. 2
"The trial court committed error in not granting defense counsel's motion for a rule 29 dismissal of the charge, because the state failed to establish the requisite value of the alleged stolen items, thereby denying the appellant-defendant due process and equal protection of the law."
 {¶ 36} In her second assignment of error, Appellant maintains that the trial court erred by denying her Crim.R. 29(A) motion for judgment of acquittal. Specifically, Appellant contends that the State failed to provide sufficient evidence regarding the value of the stolen merchandise. We disagree.
 {¶ 37} R.C. 2913.02(B)(2) divides the offense of theft into six degrees, which are distinguished by the value of the property or services stolen. Appellant was convicted of the second level delineated by R.C. 2913.02(B)(2): "theft, a felony of the fifth degree." Pursuant to R.C. 2913.02(B)(2), this conviction must be supported by proof that the property stolen by Appellant had a value of at least $500.
 {¶ 38} At the close of the State's evidence, defense counsel moved for a judgment of acquittal pursuant to Crim.R. 29. The defense renewed this motion at the close of its own case, at the close of all evidence, and after the jury returned the guilty verdict. The trial court overruled the motion.
 {¶ 39} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. When reviewing a trial court's disposition of a Crim.R. 29(A) motion, this Court must construe the evidence in the light most favorable to the prosecution. Id.
 {¶ 40} At trial, several of the State's witnesses offered testimony regarding the value of the stolen property. Paulette White testified that the merchandise stolen from the Carter's store had a value of "[a]round $763." David Webster testified that the jacket stolen from Nautica had a price of $109.99, but that it was on sale for $99 or $69. Marlena Gengo testified that the jacket had a full retail price of $180 or $159; an outlet store price of $109.99; and a sale price of $50.
 {¶ 41} Construing the evidence in the light most favorable to the State, that is, tallying the uppermost values provided for each component of the stolen property, we reach a total value of $943, which is well in excess of the $500 minimum mark. In light of the foregoing, we conclude that the State did not fail to offer evidence sufficient to establish that the stolen property had a value of at least $500. Therefore, the trial court did not err by overruling Appellant's motion for acquittal. Appellant's second assignment of error is overruled.
 III {¶ 42} Appellant's two assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
Carr, P.J., and Slaby, J., concur.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.