DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Dustin Kirk, appeals from his conviction for breaking and entering, rendered by a jury in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} On January 28, 2003, Appellant was indicted on one count of breaking and entering, in violation of R.C. 2911.13(A). Appellant entered a plea of not guilty and the matter proceeded to a jury trial, which began on June 2, 2003. The jury found Appellant guilty of breaking and entering, and the trial court sentenced Appellant to six months in prison.
 {¶ 3} Appellant timely appealed, raising two assignments of error, which we have consolidated for ease of review.
 II. Assignment of Error No. 1
"The trial court erred in denying the appellant's oral motion for directed verdict pursuant to Criminal Rule 29 because the appellee presented insufficient evidence in order to meet each and every element of the offense of breaking and entering pursuant to R.C. 2911.13."
 Assignment of Error No. 2
"The jury erred in finding the appellant guilty of breaking and entering pursuant to R.C. § 2911.13 because said findings of guilt were against the manifest weight of the evidence."
 {¶ 4} In his first assignment of error, Appellant argues that his conviction for breaking and entering is not supported by sufficient evidence. In his second assignment of error, Appellant argues that his conviction is against the manifest weight of the evidence. We disagree with both arguments.
 {¶ 5} As a preliminary matter, we note that sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. Id. at 390 (Cook, J., concurring).
 {¶ 6} On review of the sufficiency of the evidence, "`the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Williams, 99 Ohio St.3d 493,2003-Ohio-4396, at ¶ 50, quoting Jackson v. Virginia (1979),443 U.S. 307, 319.
 {¶ 7} When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must:
"review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 8} Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted). State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 9} R.C. 2911.13(A) provides that: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in [R.C. 2913.01], or any felony."
 {¶ 10} At trial, the State presented testimony from several witnesses, including Daniel DeVenture (the alleged victim), and three police officers: Officer James Cunningham, Detective Candace Grubb, and Detective Pierre Irvine. Their testimony discloses the following account of the events leading to the charges against the Appellant.
 {¶ 11} Daniel DeVenture lives with his girlfriend in a house on Triplett Boulevard, in Akron. Shortly after 6:00 a.m. on January 20, 2003, DeVenture's girlfriend arose to make coffee and noticed that the garage door had been opened. She alerted DeVenture to the open door, and he began to investigate. He walked out to his driveway, where he observed two sets of footprints in the fresh-fallen snow. The prints led to both doors of his vehicle, which was parked in the driveway, and continued into his garage. DeVenture noticed that a large tool box was missing from his garage. He surmised that someone had opened the unlocked driver's side door of his vehicle, and then used the automatic garage door opener inside the car to gain access to his garage and take the tool box. DeVenture then asked his girlfriend to call the police. While waiting for the police to arrive, DeVenture began to track the footprints, focusing his attention on one of the sets, which had a particularly distinctive tread.
 {¶ 12} Officer Cunningham of the Akron Police Department responded to the scene at approximately 7:40 a.m. After speaking with DeVenture, Officer Cunningham investigated the tracks surrounding DeVenture's vehicle, noticing that one set of the prints had an unusually distinct tread pattern. He followed the pattern from the vehicle to the garage, then down the driveway. Officer Cunningham continued to follow the prints eastbound on Triplett Boulevard, observing that they traveled through several yards and up several driveways, and then back out to Triplett Boulevard. He noticed that the prints went up to several vehicles which were parked in driveways, and that the prints led up to the newspaper box of one of the homes on Triplett Boulevard.
 {¶ 13} At this point in his investigation, according to Officer Cunningham, "it became obvious * * * that the person who was delivering papers on Triplett Boulevard that morning was the same person that made the shoe prints in Mr. DeVenture's driveway." Officer Cunningham contacted his sergeant, requesting assistance; Detective Grubb of the Akron Police Department's crime scene unit arrived shortly thereafter. After speaking with Officer Cunningham, Detective Grubb began to take photographs of the footprints.
 {¶ 14} Meanwhile, Officer Cunningham contacted the Akron Beacon Journal and learned that Jana Rollison was the carrier assigned to the neighborhood where DeVenture lived. After Detective Grubb finished taking photographs of the scene, she accompanied Officer Cunningham to Rollison's neighborhood, where they met a third Akron police officer, Officer Meadows. The three proceeded to Rollison's home. As the three exited their police cruisers, they noticed two sets of footprints leading away from a car in Rollison's driveway. Officer Cunningham determined that one of the sets were the very prints that he had been tracking on Triplett Boulevard.
 {¶ 15} The three knocked on the front door of the house, and were greeted by Rollison. Responding to the officers' questions, Rollison stated that she and her boyfriend had been delivering newspapers on Triplett Boulevard that morning, and that her boyfriend was in the home, asleep in the bedroom.
 {¶ 16} Officer Cunningham followed Rollison into the bedroom, spotting a pair of shoes en route. He asked Rollison whether those were the shoes that her boyfriend was wearing on the paper route, and she said that they were. However, Rollison then asked her boyfriend, the Appellant, whether those were in fact the shoes that he had worn, and he said that they were not, and that the shoes he had worn were in the kitchen.
 {¶ 17} Rollison then informed the Appellant that the police were there, and Appellant got out of bed and accompanied the officers to the kitchen, where he pointed to a pair of brown shoes, explaining that those were the shoes he had worn on the paper route. Observing that the soles were wet, Officer Cunningham picked up the shoes and examined their tread pattern. He determined that the pattern was the same as the one that he had followed on Triplett Boulevard.
 {¶ 18} After examining the shoes, Officer Cunningham and the other officers asked Appellant and Rollison whether they could look around the home and garage for items that might have been taken from DeVenture's garage. The couple consented to the search, but the officers did not find any of the items. Following the search, Officer Cunningham transported Appellant to the police station, where he was interviewed by Detective Irvine.
 {¶ 19} Appellant admitted to Detective Irvine that he had delivered newspapers to houses on Triplett Boulevard that morning, but he claimed that he had not entered any garages or wandered into areas towards the backs of houses where vehicles were parked, emphasizing that he had no reason to enter such areas. Appellant stated that he was wearing the shoes with the distinctive tread; that he was the only one who had the shoes on; and that the investigating officers had taken the shoes from him.
 {¶ 20} Officer Cunningham identified State's Exhibit 1 as the shoes with the distinctive tread, and explained that he had seized the shoes from Appellant's kitchen and handed them over to Detective Grubb, so that she could continue her investigation of the crime scene. Detective Grubb left Rollison's home and returned to Triplett Boulevard, taking the shoes with her. After comparing the tread on the shoes with the prints left in the snow near DeVenture's vehicle, she determined that the patterns matched. Along with the shoes marked States Exhibit 1, the State submitted photographs of the footprints at the scene which were taken by Detective Grubb.
 {¶ 21} Jana Rollison testified on behalf of Appellant. Rollison stated that she did not see Appellant carrying any tools, and that Appellant was never out of her sight for more than two minutes at a time during their delivery route. Rollison explained that she did not know anything about the tools, and pointed out that, despite multiple searches of her house and garage, her car, and Appellant's car, the police had not located any of the tools that allegedly were taken from DeVenture's garage.
 {¶ 22} After a careful review of the record, we are unable to conclude that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." As Appellant points out, the State did not produce any witnesses who testified that they observed Appellant break into DeVenture's garage and remove his tool box. However, the State did submit evidence from which the jury could reasonably infer that Appellant did perform those acts.
 {¶ 23} First, the State offered testimony establishing that, on the morning of January 20, 2003, distinctive tracks were found surrounding DeVenture's vehicle; that the tracks led into his garage, which had been opened by someone other than DeVenture and his girlfriend; and that a tool box was missing from the garage. Next, the State offered testimony showing that Appellant admitted that he delivered newspapers to DeVenture's home on the same morning, and that he wore a certain pair of shoes with a distinctive tread on the route. The State then offered testimony showing that the unique pattern on the bottom of the shoes which Appellant admitted he wore on the paper route that morning matched the unique tread pattern discovered in the snow on DeVenture's driveway, surrounding his car and leading into his garage. Additionally, the State submitted the shoes worn by Appellant on the paper route, along with photographs of the shoeprints left in the snow on DeVenture's driveway. Based upon this evidence, it is reasonable to infer that Appellant broke into DeVenture's garage and removed the tool chest.
 {¶ 24} Appellant also emphasizes Rollison's testimony that she never saw Appellant carrying any tools, and that, for the duration of the paper route, Appellant was never out of her sight for more than two minutes at a time. First, this testimony is not necessarily at odds with the evidence offered by the State, such that it renders unreasonable the inference that Appellant broke into DeVenture's garage and removed the tool chest. However, assuming, for the sake of argument, that Rollison's testimony and the evidence offered by the State are indeed irreconcilable, we are nonetheless unable to conclude that the jury clearly lost its way. Even if we assume the existence of a conflict that forced the jury to choose which side to believe, the mere fact that the jury chose to credit the testimony offered by the State's witnesses rather than Rollison's testimony does not render the guilty verdict against the manifest weight of the evidence. SeeState v. Moore, 9th Dist. No. 03CA0019, 2003-Ohio-6817, at P18, citing State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
 {¶ 25} We find that the verdict was not against the manifest weight of the evidence. Implicit within this finding is our determination that the verdict was supported by sufficient evidence. Accordingly, Appellant's two assignments of error are overruled.
 III. {¶ 26} Both of Appellant's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
Whitmore, P.J., Slaby, J., Concur.