DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Henry Smith, Jr., has appealed his convictions for robbery from the Medina County Court of Common Pleas. This Court affirms.
 I {¶ 2} On November 5, 2003, Appellant was indicted by the Medina County Grand Jury on one count of robbery, in violation of R.C. 2911.02(A)(2). The indictment stemmed from the robbery of a Marathon gas station ("Marathon robbery") on September 19, 2003. On January 22, 2004, the Medina County Grand Jury returned a second indictment against Appellant wherein he was charged with a second count of robbery, in violation of R.C. 2911.02(A)(3). The second indictment stemmed from the robbery of Jennifer Bright (nee Hoffman) ("Bright"), on August 31, 2003 while she was removing cash from an Automatic Teller Machine ("ATM") at a FirstMerit Bank in Brunswick, Ohio ("ATM robbery").
 {¶ 3} Appellant pled not guilty to both charges. The charges were prosecuted together and proceeded to a jury trial commencing on March 8, 2004. Appellant was found guilty of both charges and was sentenced to a five year term of incarceration.
 {¶ 4} Appellant has timely appealed his convictions, asserting four assignments of error. We have rearranged his assignments of error for ease of analysis.
 II Assignment of Error Number Two
"[Appellant's] convictions were against the manifest weight of the evidence and the evidence was legally insufficient to support the convictions[.]"
 {¶ 5} In his second assignment of error, Appellant has argued that his convictions were against the manifest weight of the evidence and based upon insufficient evidence. Specifically, Appellant has argued that the testimony presented by the State's witness was not credible and did not support his convictions. We disagree.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley aka G-Money (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution.State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d paragraph two of the syllabus; see, also,Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted).
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 9} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 10} In the instant matter, Appellant was convicted of two counts of robbery, one in violation of R.C. 2911.02(A)(2), and the second in violation of R.C. 2911.02(A)(3). R.C. 2911.02 states, in pertinent part, that:
"(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
"* * *
"(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
"(3) Use or threaten the immediate use of force against another."
 {¶ 11} Appellant has argued that various portions of testimony presented by several witnesses for the State lacked credibility and, therefore, his convictions were against the manifest weight of the evidence and based upon insufficient evidence. In response, the State has argued that it presented more than enough evidence to support Appellant's convictions.
 {¶ 12} Turning first to the evidence presented regarding the Marathon robbery, the record reveals that the State presented seven witnesses in total: one eyewitness; four law enforcement officers; and two other witnesses. Rose Fortune ("Fortune"), an eyewitness to the Marathon robbery, testified to the following. She was working as a cashier at the Marathon gas station on the night of September 19, 2003. On that night, an individual entered the gas station and started to purchase a candy bar. When Fortune opened to cash register in order to make change, the perpetrator reached across the cashier's counter and stole several hundred dollars from the cash register. During the course of the theft offense, the perpetrator stated that he would kill Fortune if she did not let him have the money from the cash register. Video surveillance photographs of the robbery were shown to Fortune and she identified Appellant as the perpetrator. Fortune also identified Appellant as the perpetrator both in a photo line-up and in open court.
 {¶ 13} Jeffrey Jones ("Jones"), a police officer with the Brunswick Police Department ("BPD"), testified for the State and testified to the following. On the night of September 19, 2003, he responded to an emergency call from the Marathon gas station in Brunswick, Ohio. He spoke with Fortune at the gas station, and she told him that the gas station had been robbed. She gave a general description of the perpetrator, and stated that the perpetrator had threatened to kill her if she did not let him have the money from the cash register.
 {¶ 14} Robert Safron ("Safron"), a police officer with the BPD, testified for the State and testified to the following. On the night of September 19, 2003, he responded to an emergency call from the Marathon gas station. After Fortune told Jones that the gas station had been robbed, Safron processed the scene of the crime in search of fingerprints. No fingerprints were found that matched Appellant.
 {¶ 15} Dale Schnell ("Schnell"), a detective with the BPD, testified for the State and testified to the following. He was assigned to investigate the Marathon robbery. Through the course of his investigation, he interviewed Appellant regarding the Marathon robbery and showed Appellant surveillance photographs from the robbery including multiple images of the perpetrator. When shown the photographs, Appellant began to cry and stated that "his life was over."
 {¶ 16} Henry Papushak ("Papushak"), a detective with the BPD, testified for the State and testified to the following. He was assigned to investigate the Marathon robbery. Through the course of his investigation, he showed Fortune a photo line-up of individuals matching the general description of the perpetrator she had previously given police. Fortune identified Appellant from the photo lineup as the individual who had robbed the Marathon gas station on September 19, 2003. The photo line-up was shown to another cashier who was present during the robbery, but she identified someone other than Appellant as the perpetrator. Papushak spoke with Jason DeHoff ("DeHoff"), Appellant's cellmate in the Medina County Jail while Appellant was incarcerated pending trial on the instant matter. DeHoff told Papushak that Appellant confessed to committing the Marathon robbery and DeHoff provided several details regarding the robbery and investigation. Papushak investigated the details provided by DeHoff and found them credible. Papushak also searched an apartment that Appellant intermittently shared with Yvette Evans ("Evans"). During the search of the apartment, Papushak found several pieces of Appellant's clothing that matched the general description of clothing worn by the perpetrator.
 {¶ 17} Evans also testified for the State and testified to the following. She and Appellant intermittently lived together in an apartment. Appellant owned clothing that matched the general description of clothing worn by the Marathon robber. Evans viewed the surveillance photographs from the Marathon robbery and identified Appellant as the individual in the photographs committing the robbery of the Marathon gas station on September 19, 2003.
 {¶ 18} DeHoff also testified for the State and testified to the following. He and Appellant were cellmates in the Medina County Jail. While incarcerated, Appellant told DeHoff that Appellant had, in fact, committed the Marathon robbery.
 {¶ 19} Numerous surveillance photographs and crime scene photographs were admitted into evidence, along with clothing belonging to Appellant and a document relating to the photo line-up.
 {¶ 20} Turning next to the evidence presented regarding the ATM robbery, the record reveals that Robert Casenheiser ("Casenheiser"), a police office with the BPD, testified for the State and testified to the following. He responded to an emergency call from the FirstMerit Bank ATM drive through on the night of October 31, 2003. Bright told him that she had been robbed when she withdrew money from the ATM, and that the perpetrator of the crime told her that he would hurt her if she did not give him her money. She then gave Casenheiser a general description of the robber as a black male wearing blue jeans, a plaid shirt, and a bandana across his face.
 {¶ 21} Safran testified for the State and testified to the following. He responded to an emergency call to the FirstMerit Bank on the night of September 19, 2003. He processed the crime scene for fingerprints. No fingerprints were found that matched those of Appellant.
 {¶ 22} Bright testified for the State and testified to the following. She was robbed of $81 at the FirstMerit ATM in Brunswick, Ohio on August 31, 2003. She was shown a photo line up several months after the robbery and was unable to identify the perpetrator of the robbery. She did identify Appellant in open court as the perpetrator of the robbery.
 {¶ 23} DeHoff testified for the State and testified to the following. He and Appellant shared a jail cell in the Medina County Jail. While cellmates, Appellant told DeHoff that he had, in fact, committed the ATM robbery.
 {¶ 24} Papushak testified that Bright was unable to identify Appellant in a photo line-up shown to her several months after the robbery.
 {¶ 25} Evans testified that the apartment she and Appellant intermittently shared was located next door to the FirstMerit Bank where the ATM robbery had occurred.
 {¶ 26} Appellant did not present any witnesses or evidence in his defense.
 {¶ 27} Our review of the record convinces us that the State presented ample evidence that Appellant committed both the Marathon robbery and the ATM robbery. Regarding the Marathon robbery, the surveillance photographs identified as Appellant, the eyewitness identifications, Appellant's conduct at the time of police questioning, and Appellant's confession to DeHoff served as more than enough evidence to sustain Appellant's convictions. With respect to the ATM robbery, the eyewitness identification in open court coupled with Appellant's confession to DeHoff served as more than enough evidence to sustain Appellant's conviction. Although Appellant has challenged the credibility of some of the testimony presented by the State's witnesses regarding both robberies, this Court has long given deference to the findings of a jury, "as they are in the best position to determine the credibility of witnesses during trial." State v. Aaron, 9th Dist. No. 21434, 2003-Ohio-5159, at ¶ 17. As a result, Appellant's second assignment of error is without merit.
 Assignment of Error Number One
"Appellant's sixth amendment right to effective assistance of counsel was deprived by trial court appointed defense counsel based upon the fact that he failed to make any argument or cite any case law regarding the crim.r.29 motion to dismiss or renewed motion for mistrial at the close of the State of Ohio's case or the close of evidence."
 {¶ 28} In his first assignment of error, Appellant has argued that he was denied the effective assistance of counsel at trial. Specifically, he has argued that his counsel was ineffective because said counsel did not cite any case law or present any legal arguments in support of his Crim.R. 29 motion for acquittal. We disagree.
 {¶ 29} "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v. Watson (July 30, 1997), 9th Dist. No. 18215, at 4. Debatable trial tactics do not give rise to a claim of ineffective assistance of counsel. In Re: Simon (June 13, 2001), 9th Dist. No. 00CA0072, at 4, citing State v. Clayton (1980), 62 Ohio St.2d 45, 49, certiorari denied (1980), 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102.
 {¶ 30} In order to establish that counsel's performance was ineffective, and not just debatable trial tactics, the defendant must satisfy the following twopronged test:
"`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.
 {¶ 31} The defendant bears the burden of proving prejudice. Colon,
2002-Ohio-3985, at ¶ 49, citing State v. Smith (1985), 17 Ohio St.3d 98,100.
 {¶ 32} Prejudice entails a reasonable probability that, but for counsel's errors, the result of the trial would have been different.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258,111 L.Ed.2d 768. The court is also to consider "`the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Colon, at ¶ 49, quotingStrickland, 466 U.S. at 690. An appellate court may analyze the prejudice prong of the Strickland test if such analysis will dispose of an appellant's claim of ineffective assistance of counsel. See State v. Loza
(1994), 71 Ohio St.3d 61, 83, certiorari denied (1995), 514 U.S. 1120,115 S.Ct. 1983, 131 L.Ed.2d 871.
 {¶ 33} Appellant first has argued that his defense counsel was deficient because he failed to argue that the second cashier at the Marathon gas station had identified someone other than Appellant as the perpetrator of the robbery and, therefore, his Crim.R. 29 motion for acquittal should have been granted. However, the record reveals that the State elicited testimony from Papushak, its own witness, that the second cashier at the Marathon gas station had identified someone other than Appellant as the perpetrator of the Marathon robbery. Thus the trial court was already aware of this argument.
 {¶ 34} Second, Appellant has argued that defense counsel was deficient because counsel failed to argue that Fortune's identification of Appellant as the perpetrator of the Marathon robbery lacked credibility because she had told police that the perpetrator of the robbery was not wearing a hat when the surveillance photographs revealed that the perpetrator was in fact wearing a hat. Again, the record reveals that the State elicited testimony from Fortune that, as her memory served, the perpetrator was not wearing a hat. Thus the trial court was fully aware of the inaccuracy of Fortune's testimony on this issue.
 {¶ 35} Third, Appellant has argued that defense counsel was deficient because counsel failed to argue that Fortune's testimony that she no longer "[took] care of colored people" while at work established that her in court identification of Appellant was based upon his race. However, Appellant has failed to present any evidence that Fortune's in court identification was based upon Appellant's race. Appellant's argument is purely conclusory and cannot, standing alone, support a claim of prejudice due to the ineffective assistance of counsel.
 {¶ 36} Fourth, Appellant has argued that counsel was deficient because defense counsel failed to argue, in support of his Crim.R. 29 motion for acquittal, that testimony presented by Schnell was inflammatory thus mandating Appellant be granted a mistrial. The record reveals that at one point during the trial, the trial court removed the jury from the courtroom and received testimony from Rosemary Olszewski ("Olszewski"), a sales clerk at a drugstore in North Olmsted, Ohio. Olszewski testified to the following. On October 10, 2003, she was working at the drugstore when a black male entered the store and stole cash from a cash register. Appellant "could be" the individual who committed the robbery.
 {¶ 37} The trial court found Olszewski's testimony inadmissible pursuant to Evid.R. 404(B) and ruled that any testimony regarding Appellant having been arrested for the theft offense in North Olmested was inadmissible.
 {¶ 38} Following Olszewski's testimony, the jury was brought back into the courtroom and Schnell testified for the State. The testimony of which Appellant now complains is revealed in the following colloquy:
"[The State]: And when you went to talk to [Appellant], just tell us what happened.
"[Schnell]: Well, I went to the North Olmsted Police Department where [Appellant] was incarcerated on a —
"[Defense Counsel]: Objection
"The Court: Yes. He was incarcerated at a police department where?
"[Schnell]: North Olmsted
"The Court: And what happened next?
"[The State]: Go ahead.
"[Schnell]" For a theft offense that was committed there.
"[Defense Counsel]: Objection.
"The Court: Yes. Would you all approach[?]
"(Whereupon, the further following proceedings were then held at sidebar, out of the hearing of the Jury.)
"The Court: [The State], were you aware of what the witness was going to say? How does the State want to handle what's just happened?
"[The State]: Judge, you know, that's why I asked him to just say what he said. * * * [I]t's the State's position that what he said is factually accurate. He hasn't said that he was convicted or that he confessed or the nature of any of the circumstances surrounding that. And I did state in my opening statement that he was interviewed at the North Olmsted Police Department.
"The Court: [Defense counsel?]
"[Defense:] Well, your Honor, there's obviously a difference of opinion.
 {¶ 39} Defense counsel then conferred with Appellant and a recess was had. Following the recess, defense counsel moved for a mistrial, arguing that Schnell's testimony that Appellant was in jail in North Olmsted on another theft offense was "so prejudicial that it cannot be appropriately cured by an instruction to the Jury." The State argued against the motion, and the trial court denied the motion for a mistrial.
 {¶ 40} Based on the foregoing, we reject Appellant's argument that defense counsel was deficient because he failed to be heard on the Crim.R. 29 motion for acquittal. It is clear from the record that defense counsel was in fact heard on the issue of Schnell's testimony and its alleged inflammatory nature. It is also clear from the record that the arguments Appellant claims were not made in support of the Crim.R. 29 motion for acquittal were undeniably made by defense counsel throughout the course of trial. In fact, not only were the arguments made, but the record reveals that the trial court wisely gave defense counsel a full hearing on the Crim.R. 29 motion for acquittal outside the presence of the Jury. We summarily reject Appellant's contention that defense counsel was deficient and allowed prejudice to occur simply because defense counsel did not reiterate his arguments in support of his Crim.R. 29 motion for acquittal when the trial court asked both attorneys if either had anything else to present to the jury before it began its deliberations. To adopt Appellant's argument would be to adopt a premise that the trial court needs to be told the same arguments time and again for fear it was not listening the first time.
 {¶ 41} In sum, this Court finds that Appellant has failed to show that he was prejudiced by defense counsel's performance at trial. As a result, Appellant was not denied the effective assistance of counsel at trial. Appellant's first assignment of error lacks merit.
 Assignment of Error Number Three
"The trial court erred when it failed to grant the appellant's motion for mistrial."
 {¶ 42} In his third assignment of error, Appellant has argued that the trial court erred when it refused to grant his motion for a mistrial. Specifically, Appellant has argued that Schnell's testimony that Appellant was questioned by police regarding the Marathon and ATM robberies while Appellant was incarcerated on another theft offense was grounds for a mistrial. We disagree.
 {¶ 43} The Supreme Court of Ohio has held that "[a] mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened[.]" State v. Reynolds (1988),49 Ohio App.3d 27, 33. The essential inquiry a trial court must make when entertaining a motion for mistrial is whether the substantial rights of the accused have been adversely affected. State v. Damberger (Aug. 30, 2000), 9th Dist. No. 3024-M, at 4, appeal not allowed (2001),91 Ohio St.3d 1415, citing State v. Nichols (1993), 85 Ohio App.3d 65,69. A mistrial is necessary only when a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127, certiorari denied (1992), 504 U.S. 960, 112 S.Ct. 2315, 119 L.Ed.2d 235.
 {¶ 44} Great deference is afforded to a trial court's decision regarding a motion for mistrial and the court's ruling will be reversed only upon the showing of an abuse of discretion. State v. Stewart
(1996), 111 Ohio App.3d 525, 533. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 45} Appellant first has argued that Schnell's testimony that Appellant was incarcerated on another theft offense was inflammatory and warranted a mistrial. In response, the State has argued that said testimony "was said by mistake in an effort to illustrate the circumstances of the interview."
 {¶ 46} It is well established that a jury is presumed to follow a curative instruction given it by a trial judge. State v. Garner (1995),74 Ohio St.3d 49, 59, certiorari denied (1996), 517 U.S. 1147,116 S.Ct. 1444, 134 L.Ed.2d 564. See, also, Loza, 71 Ohio St.3d 61. Furthermore, where reference to a criminal defendant's prior arrests is fleeting and promptly followed by a curative instruction, the trial court does not abuse its discretion when it denies the criminal defendant's motion for a mistrial. Garner, 74 Ohio St.3d at 59, citing State v.Glenn (1986), 28 Ohio St.3d 451, 455, certiorari denied (1987),482 U.S. 931, 107 S.Ct. 3219, 96 L.Ed.2d 705.
 {¶ 47} It is clear from the record that Schnell's testimony that Appellant was incarcerated on another theft offense was fleeting and offered merely to identify where his interview of Appellant took place. It was not said to inflame the jury or create a presumption of Appellant's guilt. In addition, the trial court immediately removed the jury from the courtroom and held a full hearing on Appellant's motion for a mistrial based upon Schnell's testimony. At the conclusion of the hearing, the trial court denied Appellant's motion for a mistrial, brought the jury back into the courtroom, and immediately gave the jury a curative instruction. Based on the foregoing, we reject Appellant's argument that he was entitled to a mistrial based upon Schnell's testimony.
 {¶ 48} Appellant next has argued that he was deprived of a fair trial because the trial court restated Schnell's allegedly impermissible testimony when it gave the jury a curative instruction. In response, the State has argued that it must be presumed that the jury adhered to the curative instruction and disregarded Schnell's testimony that Appellant was incarcerated for another theft offense when Appellant was questioned regarding the Marathon and ATM robberies.
 {¶ 49} When giving the curative instruction, the trial court stated the following:
"Just before we took our break, there was a question asked of the officer as to where he was when he interviewed [Appellant], and he indicated he was in the North [Olmsted] Police Department. The question was, "Why were you there?" The answer was, "Because he was there on another theft offense.[1] That has got nothing to do with this case. You're to disregard it. You're not to consider it in any way whatsoever. That doesn't have anything to do with these two charges, as you know, and you're not to consider them. He was physically present at the location, there was a discussion with this officer, and that's what you have to bear in mind. You are not to consider him being held in North Olmsted for another theft offense for any other reasons."
 {¶ 50} Crim.R. 52(A) addresses harmless error, stating that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." To find that an error in a criminal matter was harmless, this Court must find that the error was harmless beyond a reasonable doubt. Chapman v. California (1967),386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, paragraph two of the syllabus;State v. Lytle (1976), 48 Ohio St.2d 391, 403, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. This Court, however, may overlook an error where the properly admitted evidence comprises "overwhelming" proof of appellant's guilt. State v. Williams
(1983), 6 Ohio St.3d 281, 290, certiorari denied (1983), 464 U.S. 1020,104 S.Ct. 554, 78 L.Ed.2d 727.
 {¶ 51} Assuming, arguendo, that the trial court erred when it restated Schnell's testimony, we find such error harmless as it did not result in prejudice against Appellant, nor did it deny him a fair trial. The evidence against Appellant was overwhelming: he was identified as the perpetrator of each robbery by eyewitnesses and DeHoff testified that Appellant confessed to both robberies while the two shared a jail cell in the Medina County Jail. Therefore, we conclude that none of Appellant's substantial rights were adversely affected by Schnell's testimony or the trial court's restatement of Schnells' testimony during its curative instruction. It follows that Appellant was afforded a fair trial and is not entitled to a new trial. Appellant's third assignment of error lacks merit.
 Assignment of Error Number Four
"A substantial right of [appellant] was prejudiced by certain comments made by the state of ohio during the rebuttal closing argument that warrant a reversal of [appellant's] convictions."
 {¶ 52} In his fourth assignment of error, Appellant has argued that he was not afforded a fair trial due to prosecutorial misconduct. Specifically, Appellant has argued that the State made prejudicial statements during its closing arguments, and that such statements prevented Appellant from receiving a fair trial. We disagree.
 {¶ 53} This Court first notes that defense counsel did not object to either of the statements to which Appellant now complains. Therefore, all but plain error has been waived by Appellant. State v. Leonard,140 Ohio St.3d 54, 2004-Ohio-6235, at ¶ 27. Plain error is error that which clearly changed the result of the trial. State v. Roper, 9th Dist. No. 22102, 2005-Ohio-13, at ¶ 5. another theft offense.
 {¶ 54} Appellant first has argued that race was used as a means of securing his conviction because the State referenced "the OJ case" in its closing arguments. In response, the State has argued that it referenced "the OJ case" as an illustration of a jury verdict that it felt "lacked common sense."
 {¶ 55} The record reveals that during the State's closing argument, it summarized the evidence against Appellant, then analogized a not guilty verdict to "the OJ case." The State made no reference to race and "the OJ case." As a result, we reject Appellant's argument that the State made the reference as a means of employing race to secure his conviction.
 {¶ 56} Appellant next has argued that certain comments by the State in closing argument were racially motivated. The State has responded that it mentioned race only in rebuttal of Appellant's argument that cross-racial identifications are inaccurate.
 {¶ 57} The record reveals that defense counsel, in his closing argument, stated that the eyewitness identifications of Appellant as the Marathon and ATM robber were "very questionable." In the State's closing argument, it summarized the facts of each robbery. In this collective summarization, the State asked the jurors to:
"[I]magine that you are a white female, * * * and that a person walks into your store or up to your car and takes — physically, forcefully takes — the money from you and threatens your life and/or your safety. And I'll ask you to imagine if you could remember who did that to you? If you could see that person's face? If you were focused on his eyes?"
 {¶ 58} The State did not make any reference to the race of the imaginary perpetrator of the robbery. It is clear to this Court that the State's reference to the imaginary robbery victims as "white female[s]," when viewed in the context of the entire trial, did not prejudice Appellant's defense.
 {¶ 59} In sum, this Court finds that Appellant has not presented any evidence that but for the alleged misconduct of the State, the result of Appellant's trial would have been different. We therefore conclude that there was no error in the instant matter. Appellant's fourth assignment of error lacks merit.
 III {¶ 60} Appellant's four assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Batchelder, J. concur.
[1] Schnell's testimony was actually that Appellant "was incarcerated" for another theft offense.